KROKEY et al., Appellees,

v.

CITY OF CLEVELAND et al., Appellants.

[Cite as *Krokey v. Cleveland* (2001), 146 Ohio App.3d 179.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78341.

Decided Sept. 24, 2001.

_____

*Kolick, Georgeadis, Ernewein* and *Phillip Georgeadis,* for appellees.

*Matthew T. Brady* and *Joseph G. Hajjar*, Assistant Directors of Law, for appellants.

ANNE L. KILBANE, Judge.

This is an appeal from a jury verdict for $50,000 following a trial before Judge Ann T. Mannen. Appellant city of Cleveland ("city") claims immunity under R.C. Chapter 2744 and asserts as error (1) the failure to grant its motion for summary judgment; (2) the failure to grant a directed verdict; and (3) improper jury instruction making it liable for the intentional, willful, or wanton acts of its police officers. We reverse.

From the record we glean the following: Between 7:30 p.m. and 8:00 p.m. on July 23, 1997, Alan Krokey, then fifteen years old, witnessed a friend being beaten up by a group of young people near his home on West 58th Street. The gang dispersed and, shortly thereafter, Krokey and several others were stopped for questioning near the intersection of West 54th Street and Koch Court by a male and female police officer in a zone car and told to place their hands on the hood of the car. Soon, two other zone cars arrived and other police officers were in the area.

Krokey and Robert Pierce, who was twenty-five years old, complained to the officers that the hood of the car was hot and Pierce was able to keep his hands a few inches from the hood, avoiding serious injury, but Krokey's hands remained on the hood. Louise Peeple, Pierce's mother, and Luisa Laboy witnessed the incident and each claimed that it was apparent that Krokey and Pierce were in pain; Peeple tried to intervene with the officers and a supervisor to allow her son and Krokey to take their hands off the car but to no avail. Eventually, they were allowed to take their hands off the car and put them behind his heads.

After questioning, Krokey was released and immediately went to Laboy's home, where she treated his blistered hands with cold water and ointment and he went home to bed. The next morning Krokey was taken to a hospital emergency room by his mother after she noticed increased blistering. Richard Frattiane, M.D., a plastic surgeon who specializes in burn treatment, diagnosed second and third degree burns on the palms of Krokey's hands. He performed skin graft operations on both hands using donor skin from Krokey's back.

Neither Krokey, Pierce, Peeple, nor Laboy could specifically identify any officer at the scene and no one noted their badge numbers. Linda Krokey, the boy's mother, filed a complaint with the city and received a response identifying officers Barbara Johnson, Rochelle Bottone, David Kelly, and David Kornatowski as the subjects of an investigation into the incident.

In February 1998, Krokey, individually and as her son's natural guardian, filed

suit against the city, the four officers, and two officers named "Doe,"[1] alleging federal civil rights violations pursuant to Section 1983, Title 42, U.S.Code, state tort claims for unlawful detention and assault and battery, and a medical expense/loss of consortium claim. That action was dismissed under Civ.R. 41(A)(1) and refiled in June 1999. In response to discovery, the city denied that the named officers were responsible and stated that it had no records that any officer had stopped Krokey on July 23, 1997.

On June 2, 2000, the Krokeys were granted leave to amend their complaint to state a federal conspiracy claim under Section 1985, Title 42, U.S.Code, on the condition that no further discovery would be conducted and the amendment would not delay the June 5, 2000 trial date. The conspiracy claim was based on Krokey's belief that the city's defense to the action would be to deny that any incident ever occurred.

At trial, the city did not categorically deny that Krokey had been stopped by its police officers but denied that the four named officers were the ones who detained him and argued that he had failed to prove his case because he could not identify badge numbers, zone car numbers, or the alleged officers involved. Officers Kornatowski and Kelly testified that their duty report indicated that on July 23, 1997, they drove to 3279 West 54th Street in response to a report of a person with a gun, arrived at 8:12 p.m., and left at 8:55 p.m., but each denied any independent recollection of that evening. The duty report indicated that they stopped three named persons for questioning at the scene, but Krokey was not one of them. There was no evidence that any of the persons identified on the report were with Krokey at the time and the city maintained that it had no record that he was ever stopped. Officers Johnson and Bottone did not testify.

After presentation of the Krokeys' case in chief, the judge granted a directed verdict to all four officers on all claims, stating that there was insufficient evidence identifying them as the officers involved. She granted a directed verdict to the city on the Krokeys' federal claims, stating that they had failed to show a custom, practice, or failure to train that would make the city liable for the officers' actions under Section 1983 or to show any evidence of a conspiracy under Section 1985. She also granted a directed verdict to the city on the medical expenses/loss-of-consortium claim and on request for punitive damages, finding that relief is prohibited by R.C. 2744.05.

The judge submitted the case against the city to the jury only on the claim of unlawful detention and assault and battery despite the city's claims that it was immune from liability for the tortious acts of its employees under R.C. 2744.02.

---

1. It appears that Krokey intended to assert an action against unknown Cleveland police officers, but the complaint is procedurally infirm.

She stated that Krokey had proven that he was the victim of an assault and battery committed by city police officers and, once the assault was shown, "the burden shifts to the defendant, City of Cleveland, to prove that there were no police officers involved in this incident and thus avoid the exception to the immunity statute which talks about willful and wanton misconduct." In response to the city's claims of statutory immunity, the judge interpreted case law to hold that R.C. 2744.02 "did not preclude an action based upon willful and wanton conduct of a political subdivision or its employees, or where the acts or omissions were outside the scope of the employee's employment."

The jury returned a verdict in favor of Krokey for $50,000 plus medical expenses, which subsequently were found to have been paid from a collateral source and not recoverable under R.C. 2744.05(B).

The city asserts three assignments of error:

"I. The trial court erred in denying the city of Cleveland's motion for summary judgment on plaintiff–appellee's state law claims because the city is immune from liability pursuant to Chapter 2744 of the Revised Code.

"II. The trial court erred in denying the city of Cleveland's motions for directed verdict on plaintiff–appellee's state law claims at the close of plaintiff's case and at the close of defendants' case because the city is immune from liability pursuant to Chapter 2744 of the Ohio Revised Code.

"III. The trial court instructed the jury erroneously and erred in omitting defendant–appellant city of Cleveland's proposed jury instruction on Ohio Revised Code § 2744.02."

We can address these assignments together, because all three raise the same ultimate question: Whether the city is immune from these claims under R.C. 2744.02, which states:

"(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

The judge relied on *Brkic v. Cleveland (Brkic I)* [2] in support of her decision, stating that R.C. 2744.02 "did not preclude an action based upon willful and wanton conduct of a political subdivision or its employees, or where the acts or

---

2. (1995), 100 Ohio App.3d 282, 653 N.E.2d 1225.

omissions were outside the scope of the employee's employment." The judge apparently found an exception to municipal immunity in this particular circumstance, where Krokey had proven that the incident occurred but could not identify the employees involved. She did not find R.C. Chapter 2744 wholly inapplicable, however, because she found that R.C. 2744.05 prohibited recovery of punitive damages or damages for loss of consortium.

In *Brkic I,* city police officers did extensive damage to a home while executing a search warrant; the property was condemned after a subsequent inspection found several housing violations. The owner of the property claimed that the violations were caused by the police search and sought compensation for those damages based on the Ohio Constitution's due-process guarantees and the prohibition against taking private property for public use without compensation. Brkic sued the city and various public officials but did not name as defendants the police officers who executed the warrant or the inspectors who condemned the house. Nevertheless, this court reversed a grant of summary judgment in favor of the city, stating in part:

"R.C. 2744.01(C)(1) defines 'governmental function,' and R.C. 2744.01(C)(2) provides that the provision of police protection is a governmental function. R.C. 2744.03 provides defenses or immunities of the political subdivision and the employees. There is nothing in the language of these statutes concerning immunity that precludes an action based upon willful and wanton conduct of the political subdivision or its employees. In fact, R.C. 2744.03(A), by its language, contemplates that a political subdivision is a proper party to a civil action, and sections (6) and (7) establish that an employee has no immunity where the acts or omissions were done with a malicious purpose, in bad faith, or in a wanton or reckless manner."[3]

The Krokeys assert that *Brkic I* provides an exception to the city's immunity from suit where its employees commit intentional torts such as the assault and battery found here, because such acts are necessarily "wanton" or outside the scope of employment. R.C. 2744.03 states:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

"* * *

---

3. *Id.* at 287, 653 N.E.2d at 1228.

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or section 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code."

To the extent that *Brkic I* suggests that liability can be imposed on the city pursuant to R.C. 2744.03(A)(6) even when none of the exceptions to immunity stated in R.C. 2744.02 applies, that suggestion has been rejected by the Ohio Supreme Court's subsequent decision in *Cater v. Cleveland*.[4] R.C. 2744.02(B) sets forth five exceptions to the general grant of immunity, none of which applies to this case. R.C. 2744.03 does not grant exceptions to immunity but instead provides defenses in particular circumstances if the political subdivision is subject to suit under R.C. 2744.02. R.C. 2744.03(A)(6) refers only to the immunity of an employee of a political subdivision; the fact that the employee remains liable for his intentional torts does not automatically render the political subdivision liable as well.

In a subsequent appeal of *Brkic* (*Brkic II*),[5] this court did not rely on any supposed exception to immunity contained in R.C. 2744.03 but found R.C. Chapter 2744 inapplicable, stating that Brkic's "causes of action were constitutional in nature and did not sound in tort."[6] Because R.C. Chapter 2744 applies only to tort actions, it did not prohibit the claims alleged.[7] However, even if we could broadly construe Krokey's complaint to allege a due-process claim based on the Ohio Constitution, we would be reluctant to affirm the action on such grounds without full briefing and argument. The *Brkic* litigation concerned property claims, and even though R.C. 2744.02(A)(1) purports to apply to property loss, it specifically provides immunity from liability in damages. The actions in *Brkic II* could be classified as claims for restitution, rather than damages, and the focus

---

4. (1998), 83 Ohio St.3d 24, 32, 697 N.E.2d 610, 617.

5. (1997), 124 Ohio App.3d 271, 706 N.E.2d 10.

6. *Id.* at 282, 706 N.E.2d at 17.

7. *Id.*

directed more at the fact that the takings claim "did not sound in tort," rather than the fact that it was a constitutional claim.

Even though a judicial abrogation of common-law sovereign immunity can be appropriate,[8] it would be inappropriate for this court to find a waiver where the Ohio legislature clearly intended to grant immunity. Without argument persuading us to the contrary, nothing in R.C. Chapter 2744 suggests an exception to political subdivision immunity for intentional torts that might also be viewed as violations of state constitutional guarantees. R.C. 2744.09 states that the chapter does not apply to employment claims or to claims based on the federal Constitution, but fails to mention an exception for state constitutional torts. On the record and argument advanced, we cannot consider granting such an exception here.

Cases such as this tempt one to seek exceptions to statutory immunity because Krokey will be denied recovery for an incident in which his rights clearly were violated, but he is penalized for his inability to identify the perpetrators. Although the judge found no evidence of conspiracy here, and there is no evidence that discovery provisions were violated, it was reasonable for Krokey to question the city's apparent decision not to investigate and discover the officers responsible for his injuries, or to determine why its records did not disclose that the incident occurred. Nevertheless, R.C. 2744.02(A)(1) cannot be ignored.

Because there is some dispute over the timeliness of the city's motion for summary judgment and the rationale for denying that motion, we find that the city was entitled to a directed verdict on the assault and battery claim and sustain the second assignment of error. We find the first and third assignments of error moot pursuant to App.R. 12(A)(1)(c).

Judgment reversed and cause remanded for entry of judgment consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JAMES J. SWEENEY, J., concurs.

TERRENCE O'DONNELL, J., concurs in judgment only.

---

8. *Schenkolewski v. Cleveland Metroparks Sys.* (1981), 67 Ohio St.2d 31, 21 O.O.3d 19, 426 N.E.2d 784, paragraph one of the syllabus.