**George KRANTZ, Plaintiff,**

v.

**CITY OF TOLEDO POLICE DEPARTMENT, et al.,
Defendant.**

No. 3:03 CV 7325.

United States District Court,
N.D. Ohio,
Western Division.

April 15, 2005.

George R. Royer, Toledo, OH, for Plaintiff.

## MEMORANDUM OPINION

KATZ, Senior District Judge.

This is an unlawful arrest case brought by Plaintiff, George Krantz, against Defendants Lucas County Children's Services Board (LCCSB), City of Toledo Police Department, Keely Gray, Officer Mario Wallace, and four unnamed Defendants. Krantz alleges seven intertwined causes of action: 1) illegal search and seizure; 2) false arrest and imprisonment; 3) defamation; 4) malicious prosecution; 5) fourth amendment and undefined state constitutional violations; 6) gender discrimination; and 7) assault. Pending are the motion of the City of Toledo Police Department and Mario Wallace for summary judgment (Doc. No. 61) and the motion of LCCSB and Keely Gray (Doc. No. 63), to which Plaintiff has filed a response and two amendments thereto (Doc. Nos. 87, 88 & 91). Defendants have filed replies (Doc. Nos. 85 & 86). Plaintiff has filed a surreply (Doc. No. 97). For the reasons that follow, Defendants' motions for summary judgment on all claims are granted in full.

### Background

Plaintiff George Krantz is engaged in a long-running custody dispute with Particia Wyman over the custody of their son. On or about August 6, 2002, Wyman complained to the police that Krantz had interfered with her custody rights. Detective Robert Schroeder followed up on this report by contacting LCCSB, where he spoke to Keely Gray. Gray advised Schroeder that Wyman had custody.

Apparently, Gray was in error. While a Juvenile Court Magistrate had granted custody to Wyman, Krantz had filed an objection to the ruling, and, on April 30, 2002, the Juvenile Court vacated the Magistrate's order. In the meantime, LCCSB retained temporary custody. At the time of Schroeder's call, Gray was unaware of the objection and believed the original custody order to be in effect.

On August 15, 2002, Schroeder drove to Krantz's residence in Toledo, Ohio. Schroeder observed Krantz leaving the residence in a van with two children. Schroeder followed the vehicle as it proceeded through the neighborhood and back to Krantz's residence. During the course of this trip, Schroeder summoned other officers, including Carol Scherer, Leah Lewis, and Mario Wallace. Officers Scherer and Lewis attempted to stop Krantz, who turned onto Oak Street, where he parked the van.

Immediately after parking his van, Krantz sprung from the vehicle and began screaming angrily at the officers. The officers ordered Krantz to return to his vehicle, but he ignored them. He also refused to put his hands on the vehicle. At approximately this time, Officer Wallace arrived on the scene and placed Krantz against the van, using some degree of force. Krantz was then handcuffed, patted down, and held by the van, while he continued his verbal protestations.

Detective Schroeder attempted to explain to Krantz the allegations regarding his custody dispute, prompting Krantz to instruct the officers to look at his "court papers" inside the van. Officer Scherer entered the van and retrieved the papers. After reviewing the papers, Schroeder contacted Detective Robert Maxwell at the Toledo police station in order to verify the custody issue with Gray at LCCSB. Gray again informed the officers that Wyman had custody.

Acting on this information, Detective Schroeder then contacted Wyman, who arrived and took the child. Krantz was then released. No charges were filed.

### Discussion

#### 1. State Law Torts

Krantz alleges six state law tort claims. All Defendants assert immunity.

### a. Political Subdivisions

■ As to LCCSB and the City of Toledo, R.C. 2744.02(A)(1) provides that political subdivisions are not liable for damages for "injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental ... function." Unless one of the five exceptions set forth in R.C. 2744.02(B)(1)-(5) applies, the city or subdivision is immune. *Campbell v. Burton*, 92 Ohio St.3d 336, 343, 750 N.E.2d 539 (2001). R.C. 2744.02 sets forth five exceptions to municipal immunity:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;

(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;

(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506 or a driver's license issued pursuant to Chapter 4507. of the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

Krantz alleges false arrest, false imprisonment, malicious prosecution, defamation, and conspiracy against LCCSB and the City. None of these claims fall under any of the five exceptions to municipal immunity, nor does Krantz argue they do so.[1] Because Krantz cannot overcome the presumption of immunity for Defendants LCCSB and the City, summary judgment shall be granted as to his state law claims against these Defendants.

### b. Defendant Gray

■ Krantz alleges state law claims of false arrest, false imprisonment, malicious prosecution, conspiracy, and defamation against Gray. As an employee of a political subdivision, Gray is presumed immune from civil liability in connection with a governmental function. *Franklin v. City of Dayton Prob. Servs. Dep't.*, 109 Ohio App.3d 613, 672 N.E.2d 1039 (1996). R.C. 2744.03(A)(6)(a)-(c) provide exceptions to this immunity in three circumstances: 1) the acts or omissions were manifestly out-

side the scope of employment or official responsibilities; 2) the acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or 3) liability is expressly imposed upon the employee by a section of the Ohio Revised Code. *Oswald v. Lucas County Juvenile Det. Ctr.*, 1999 WL 504209 (N.D.Ohio Aug.17, 1998).

■ Krantz alleges Gray engaged in reckless and wanton misconduct when she mistakenly informed the police that Wyman had custody of the children, not Krantz. Gray's conduct does not approach recklessness. Gray was simply unaware that the Magistrate's Order had been set aside by the Juvenile Court Judge. While her error was regrettable, there is no evidence of truly wanton or reckless conduct. Therefore, she is immune and summary judgment on these counts is proper.

### c. Defendant Wallace

■ Officer Wallace claims immunity on the defamation claim. Krantz claims that Wallace, among other officers, made various statements to onlookers that Krantz interfered with Wyman's custody. While Krantz contends that such statements were made in a wanton or reckless manner, whatever statements Wallace made about the custody dispute were made based on *two* calls made by Schroeder to the LCCSB to confirm that status. Such conduct is in no way reckless or wanton. As such, Wallace is immune from this slander action and summary judgment is proper.

Wallace also claims immunity on the claims of false arrest, false imprisonment, malicious prosecution, and assault. Ohio does not recognize a tort of false imprisonment against an officer. *Norwell v. City of*

---

**1.** Krantz contends in his response that LCCSB violated R.C. 2151.421 by failing to fully investigate the custody claims against him. However, no violation of R.C. 2151.421 is alleged in the complaint.

*Cincinnati*, 133 Ohio App.3d 790, 729 N.E.2d 1223 (1999). Further, Krantz was never prosecuted. As to the false arrest claim, even if this court were to accept that Krantz was arrested, there again is no evidence of malice, bad faith, or wanton or reckless conduct. Wallace acted in good faith on the information provided to him by Schroeder and LCCSB. There is similarly no evidence of malice, bad faith, or wanton or reckless conduct with respect to the assault claim. Officer Wallace used a minimal amount of force to keep Krantz against the van. Given Krantz's agitated and aggressive response to the police, such force was clearly warranted and justified.

### d. State Law Merits

■ Further, Krantz's claims of false arrest, false imprisonment, and malicious prosecution are meritless. To succeed on a claim of false arrest or imprisonment, a plaintiff must establish that the defendants were without legal authority to arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures. *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 607 N.E.2d 936 (1992). Police may briefly stop an individual for investigation if they have a "reasonable suspicion" that the individual has committed a crime. *U.S. v. Palomino*, 100 F.3d 446, 449 (6th Cir.1996). The record clearly reflects that the officers reasonably relied upon the information provided to them regarding the custody dispute.

Krantz "argues" that he was arrested by the mere fact of detention at the scene. "An investigative *Terry* stop may ripen into an arrest through the passage of time or the use of force." *Houston v. Does 1–5*, 174 F.3d 809, 814 (6th Cir.1999) (citations omitted). While there is no bright line that distinguishes an investigative stop from an arrest, on these facts it is clear that Krantz was not arrested. The record shows that Krantz was stopped and detained briefly by the officers while they attempted to sort out the custody situation. Krantz spent much of the encounter uncuffed, merely standing against his van. He was never placed in a police car, given *Miranda* warnings or charged with any crime related to the August 15, 2002, incident. The entire incident lasted approximately twenty-five minutes. Each of these factors points to the conclusion that Krantz was not arrested. *See generally Houston*, 174 F.3d at 815.

■ Moreover, even if this court were to consider the stop an arrest, the Defendants did not act improperly. Their reliance on the information provided by LCCSB was in no way improper and provided them with probable cause for an arrest. An officer may rely on a single witness or victim to establish probable cause. *Ahlers v. Schebil*, 188 F.3d 365, 370–71 (6th Cir.1999).

### 2. Constitutional Violations

Krantz claims the officers violated his Federal and State Constitutional rights by illegally searching his van, arresting him without probable cause, and "Harassment of Plaintiff by Defendants' employees and officers by detaining and questioning Plaintiff without proper cause or basis, or file false reports about Plaintiff and other actions."

■ Insofar as these claims are brought under § 1983, they also must fail. First of all, governmental entities such as LCCSB or the Police Department cannot be held liable under § 1983 on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, a Plaintiff must show that an action pursuant to an official policy or custom caused the injury. *Taylor v. Canton*, 544 F.Supp. 783 (N.D.Ohio 1982). Because Krantz has again produced no evidence of such poli-

cies or customs, summary judgment is proper

■ As to Krantz's claim of an improper search of his vehicle, the officer who entered his vehicle, Scherer, is not a defendant. Further, it is undisputed that Krantz told the officers to get his papers from the van. A consensual search does not violate the Fourth Amendment. Summary judgment again is proper as to this claim. Further, as discussed *supra,* Defendants did not arrest Krantz even though they had probable cause to do so. Again, summary judgment for Defendants is proper.

Insofar as these claims are brought under the Ohio Constitution, Defendants claim they are barred by R.C. § 2744, as discussed *supra.* This is in error; such immunity applies to tort claims, not constitutional claims. *See Krokey v. City of Cleveland,* 146 Ohio App.3d 179, 765 N.E.2d 889 (2001). However, Plaintiff has not articulated which sections of the Ohio Constitution Plaintiff believes were violated. This court is left to speculate that these claims are based upon those sections of the Ohio Constitution that are substantially similar to the Federal Constitution. Thus, these claims must fail for the reasons discussed earlier.

### 3. Federal Claims

Plaintiff alleges Defendants discriminated against him on the basis of sex. As he has presented no evidence whatsoever to support this claim, summary judgment for Defendants is proper. *See* Fed. R.Civ.P. 56(e).

Plaintiff also appears to allege a § 1985 claim for conspiracy. He has again advanced no evidence to support this claim. Further, the vague and conclusory complaint fails to plead this claim sufficiently. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Summary judgment is granted for Defendants on this claim.

### ·Conclusion

For the reasons stated above, the motion of Defendants City of Toledo Police Department and Mario Wallace for summary judgment (Doc. No. 61) is granted. Likewise, the motion of Defendants Lucas County Children's Services Board and Keely Gray for summary judgment (Doc. No. 63) is granted.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the motion of Defendants City of Toledo Police Department and Mario Wallace for summary judgment (Doc. No. 61) is granted.

FURTHER ORDERED that the motion of Defendants Lucas County Children's Services Board and Keely Gray for summary judgment (Doc. No. 63) is granted.