[Cite as *Village of Rayland v. Jenkins*, 2018-Ohio-3487.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

VILLAGE OF RAYLAND,

Plaintiff-Appellant,

v.

GORDON MICHAEL JENKINS, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 JE 0004**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 14 CV 480

**BEFORE:**
Kathleen Bartlett, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
REVERSED AND REMANDED

---

*Atty. Brian Zets and Attorney Dale Cook*, Two Miranova Place, Suite, 700, Columbus, Ohio, 43215, for Appellant and

*Atty. Mark Kepple*, 1219 Chapline Street, Wheeling, West Virginia, 26003, for Appellees.

Dated:  August 27, 2018

**BARTLETT, J.**

{¶1} Appellant, Village of Rayland ("Appellant" or "the Village"), appeals the judgment entry of the Jefferson County Court of Common Pleas denying its motion for summary judgment. Appellant contends that it is immune from suit on the counterclaim filed by Appellees, Gordon M. Jenkins and Andrea Jenkins, on the basis of sovereign immunity. For the following reasons, the judgment of the trial court is reversed, summary judgment is entered in favor of the Village and this matter is remanded to the trial court for further proceedings on the complaint.

I.    Facts and Procedural History

{¶2} The following facts are undisputed and taken from the affidavits of Richard Bibbo, the Village Administrator at all time relevant to the complaint and counterclaim. The Bibbo affidavits, and the attachments thereto, are the only evidence before us, as Appellees offered no evidence in support of their opposition brief.

{¶3} Effective December 1, 2012, Appellant passed an ordinance establishing a street light utility fee of four dollars per month for all residents and businesses within the corporate limits. A street light utility fee fund was established from which Appellant pays any and all necessary costs relating to the operation of street lights. The street light utility fee is collected in conjunction with other utilities provided by the Village through a unified monthly bill, which includes fees for garbage collection, and sewer and water service. Village of Rayland Ordinance No. 12-2012.

{¶4} Appellees objected to the imposition of the street light utility fee and refused to pay it. They regularly deducted the four dollar fee, as well as any past due amount based on the four dollar fee, from their monthly utility payment. A notation explaining their refusal to pay the fee was written on their remittance stub and check. Similarly, when monthly late fees of ten dollars were assessed pursuant to Village of Rayland Ordinance No. 8-95, Appellees deducted both the past due and current street light fees and late fees from their monthly remittance. (9/2/16 Bibbo Aff. ¶10.) In a letter to the Village dated February 20, 2013, Appellee, Michael Jenkins stated that he

had no intention of paying the street light utility fee and he "implore[d]" Appellant to take him to court on the matter. (2/20/13 Letter, p. 1.)

{¶5} In June and July of 2013, Appellant issued two separate undated delinquency notices to Appellees. The delinquency notices read, in pertinent part:

THE VILLAGE RECORDS SHOW YOUR UTILITY BILL HAS NOT BEEN PAID BEFORE THE DUE DATE. AN ADDITIONAL LATE CHARGE OF $10.00 HAS BEEN ADDED TO YOUR BILL. IF THE BILL IS NOT PAID WITH FIVE (5) DAYS, YOUR WATER WILL BE SHUT OFF. THE BILL MUST BE PAID IN FULL BEFORE YOUR WATER WILL BE TURNED BACK ON.

The first delinquency notice listed a past due amount of $50.00 and a scheduled shut off date of July 1, 2013. The second delinquency notice listed a past due amount of $64.00 and a scheduled shut off date of July 29, 2013. (Undated Delinquency Notices.) Appellant concedes that Appellees' water service was terminated for non-payment of street light fees, but there is no averment regarding the date that water services were terminated or the length of time that Appellees were without water. (8/2/16 Bibbo Aff., ¶14.)

{¶6} In 2014, Appellant filed a complaint in the small claims division of the Jefferson County Court to recover $229.00 in past due fees from Appellees and requested an Order directing Appellees to pay their street light utility fee in the future. Case No. 2014-CVI-5. Appellees filed a single counterclaim alleging that the street light utility fee ordinance is unconstitutional. Appellees further alleged that actions undertaken by Appellant's employees constituted violations of the takings, free speech, and due process clauses of the Ohio Constitution. Appellees also asserted a wrongful termination of water services claim, alleging that their water service was terminated for their continuing refusal to pay the street light utility fee.

{¶7} In their appellate brief, Appellees allege that Appellant's employees towed Appellees' car in order to gain access to the water valve on the property and damaged their yard in the process. Appellees further allege that Appellant harassed them at public meetings and pressured their landlord into ending their tenancy. However,

Appellees offered no evidence in support of their opposition brief, so we cannot consider these allegations. In their appellate brief, Appellant concedes that its employees towed Appellees' car in order to access the shut-off valve, mistakenly citing the Bibbo affidavit, which contains no averment regarding the towing of Appellees' car.

{¶8} Appellees clearly state in their counterclaim that they were not alleging any federal claims or any state claims that may be preempted by federal claims. Based on the alleged denial by Appellant of water service to Appellees for 24 days (another allegation that is not supported by facts in the record), they seek compensatory, punitive, and other damages for inconvenience and annoyance in the amount of $750,000.00, as well as attorney's fees, interest and cost. Because the counterclaim met the amount in controversy requirement for the jurisdiction of the court of common pleas, the matter was transferred from the small claims division to the common pleas court on November 5, 2014.

{¶9} On September 2, 2016, after the close of discovery, Appellant filed two motions for summary judgment: The first requested judgment on Appellant's claim to recover the delinquent utility and late fees, as well as an injunction imposing "an ongoing requirement to pay $4.00 per month." (9/2/2017 Mot. for S.J., p. 4.) The second requested judgment on Appellees' counterclaim.

{¶10} With respect to the counterclaim, Appellant argued that the ordinance was constitutionally sound and that the Village had the authority to terminate Appellees' water service due to nonpayment of the unified utility bill in full. Appellant further argued that it was immune from liability pursuant to R.C. Chapter 2744. Appellant asserted that, although it was engaged in a proprietary function, Appellees failed to demonstrate any negligence on the part of the Village employees who terminated Appellees' water service.

{¶11} In Appellees' response to the motions for summary judgment, they argued that the termination of their water service for failure to pay their street light utility fee was a due process violation. They further argued that the imposition of the late fees, which were more than three times greater than the delinquent street light utility fees, constituted cruel and unusual punishment. They asserted that municipalities may be sued directly under 42 U.S.C. 1983, despite the fact that they specifically renounced

any and all federal claims in their counterclaim. Finally, they argued that Appellant was engaged in a proprietary function, and therefore could not assert an immunity defense.

{¶12} The trial court denied both motions without any legal analysis. (1/24/2017 J.E.) This timely appeal followed.

II.    Standard of Review

{¶13} When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C). *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶14} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

III.   Law

{¶15}   The Political Subdivision Tort Liability Act is codified in R.C. Chapter 2744 and was enacted in response to the judicial abolishment of the common-law doctrine of sovereign immunity for municipal corporations in *Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26, 442 N.E.2d 749 (1982), and *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.*, 6 Ohio St.3d 31, 451 N.E.2d 228 (1983).   See *Franks v. Lopez*, 69 Ohio St.3d 345, 347, 632 N.E.2d 502 (1994).   The Act established statutory tort immunity in specific cases in which political subdivisions, including cities and townships, may otherwise be sued in negligence.   *Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, at ¶ 9.   The availability of sovereign immunity is a question of law properly determined by the court prior to trial.   *Emmerling v. Mahoning Cty. Bd. of Commrs.,* 7th Dist. No. 15 MA 0165, 2017-Ohio-9066, ¶¶ 16-17, appeal not allowed sub nom. *Emmerling v. Mahoning Cty. Bd. of Commrs.*, 152 Ohio St.3d 1466, 2018-Ohio-1795, 97 N.E.3d 501, ¶¶ 16-17 (2018), citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992).

{¶16}   The determination of whether or not a political subdivision is immune from tort liability for injuries or death to a person involves a three-tiered analysis. *Rastaedt v. Youngstown*, 7th Dist. No. 12 MA 0082, 2013-Ohio-750, ¶ 10; *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7.   R.C. 2744.02(A) sets forth the general rule of immunity for political subdivisions, stating: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Five exceptions are set forth in subsection (B). If an exception is found, immunity can still exist if the political subdivision shows that one of the defenses contained in R.C. § 2744.03 applies.

{¶17}   R.C. 2744.09 sets forth several exceptions that remove certain types of civil actions entirely from the purview of R.C. Chapter 2744.   Relevant here, municipalities may not invoke sovereign immunity when a plaintiff alleges civil claims based upon violations of the constitution or statutes of the United States.   R.C. 2744.09(E).   At least one Ohio intermediate court has recognized that claims based

upon violations of Ohio statutes or the state constitution are not exempt from the application of Chapter 2744.  In *Krokey v. Cleveland*, 146 Ohio App.3d 179, 185, 765 N.E.2d 889 (8th Dist.2001), the Eighth District opined that "nothing in R.C. Chapter 2744 suggests an exception to political subdivision immunity for intentional torts that might also be viewed as violations of state constitutional guarantees. R.C. 2744.09 states that the chapter does not apply to employment claims or to claims based on the federal Constitution, but fails to mention an exception for state constitutional torts." *Id.* at 185.

IV.    Analysis

**{¶18}** Appellant advances a single assignment of error:

The trial court erred in denying the Village of Rayland's motion for summary judgment as the Village is immune.

**{¶19}** Appellees contend that Appellant retaliated against them for their refusal to pay the street light fee by terminating their water service.  Retaliation is, by its very nature, an intentional act.  The sovereign immunity statute expressly immunizes political subdivisions from suits involving intentional bad acts by employees.  *Cooper v. Youngstown*, 7th Dist. No. 15 MA 0029, 2016-Ohio-7184, ¶ 25, citing *Wilson v. Stark Cty. Dept. of Human Services*, 70 Ohio St.3d 450, 452, 639 N.E.2d 105 (1994).  Therefore, the trial court erred in denying Appellant's motion for summary judgment based on sovereign immunity to the extent that Appellees seek damages for injury resulting from intentional conduct.

**{¶20}** Likewise, the Village is immune from suit on Appellees' Ohio constitutional claims.  The General Assembly specifically exempted civil claims based upon federal statutes and the federal constitution from the purview of Chapter 2744.  There is no similar provision for civil claims based upon Ohio statutes or the state constitution.

**{¶21}** Turning to Appellees' wrongful termination of water services claim, the parties do not dispute that Appellant is a political subdivision under R.C. 2744.01(F).  The functions of a political subdivision are classified, for immunity purposes, as either governmental or proprietary. R.C. 2744.02(A)(1).  The establishment, maintenance, and

operation of a utility, including a municipal corporation water supply system are proprietary functions. R.C. 2744.01(G)(2)(c).

{¶22} R.C. 2744.02(B)(2) states:

Except as otherwise provided * * *, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

{¶23} Appellant argues that Appellees failed to establish that the termination of their water service for non-payment of the unified utility bill constitutes negligence under Ohio law. Appellant argues that in order to establish negligence Appellees must show: (1) the existence of a duty owed by the Village to Appellees; (2) breach of that duty; (3) harm to Appellees caused by the breach; and (4) damages. *Lagowski v. Shelly & Sands, Inc.,* 7th Dist. No. 13 BE 21, 2015-Ohio-2685, 38 N.E.3d 456, ¶ 7, citing *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996).

{¶24} Almost eighty years ago, in *State ex rel. Mt. Sinai Hosp. of Cleveland v. Hickey*, 137 Ohio St. 474, 477, 30 N.E.2d 802, 804 (1940), the Ohio Supreme Court recognized that a municipality operating a waterworks is engaged in a proprietary undertaking. The Court further observed that the only general restraints imposed on the distribution of water are that the rates charged be reasonable and that there be no unjust discrimination among the customers served, taking into account their situation and classification. *Id.* at 477.

{¶25} Appellees concede that a municipality may terminate water service to a citizen who is delinquent on their water bill. *Papadelis v. City of Cleveland*, 8th Dist. No. 69254, 1996 WL 157350. Appellees further concede that a municipality may terminate water service when a citizen is in arrears for a closely-related service. In *Gatton v. City of Mansfield,* 67 Ohio App. 210, 36 N.E.2d 306 (5th Dist.1940), the Fifth District recognized that water service and sewer service were related and "rightfully considered one transaction." *Id.* at 212. As a consequence, the Court held that a regulation permitting the termination of water service to a citizen who is delinquent in the payment

of a sewer rental is not unreasonable. In *Spofforth v. City of Athens*, 4th Dist. No. 1487, 1992 WL 50009, the Fourth District recognized the constitutionality of a municipality's decision to terminate water service when a citizen refused to pay the garbage component of a unified utility bill. The Fourth District observed that courts had recently begun to view garbage service as being related, like sewer service, to a city's attempt to provide "a comprehensive public health and sanitation program." *Id.* at *10 (internal citations omitted.)

{¶26} Based upon the foregoing case law, appellate courts in Ohio recognized a common-law duty on the part of municipalities to provide water service when a water bill is paid in full. They have also carved out exceptions to this general duty based upon the relationship between water service and an unpaid utility to determine whether a municipality acts reasonably in terminating water service for failure to pay the other unpaid utility bill. In other words, Ohio appellate courts have recognized the authority of municipalities to enforce payment of a unified utility bill through the termination of a related utility.

{¶27} Appellees assert that water and street lights are completely unrelated and that street lights are not an essential service. Appellees assert that the Village had the authority to terminate Appellees' street light service, but that it was unreasonable to terminate their water service.

{¶28} At first blush, the termination of Appellees' water service appears to be unreasonable. The termination of water service to a residence is a severe penalty, particularly where the water bill for the residence is paid in full. Appellant had another option, which it pursued several months later in small claims court. However, even though Appellant may collect past due amounts, the existence of an adequate remedy at law would prohibit the trial court from issuing an injunction to compel Appellees to pay their street light utility fee in the future. Based upon the position taken by Appellees, it appears that the Village would have to repeatedly collect utility fees through the court system, which would be unreasonable.

{¶29} Therefore, we conclude that the Village did not act unreasonably in terminating Appellees' water service. In addition to our unwillingness to impose a burden upon the Village to pursue the non-payment of Appellees' street light fee bill

through the court system ad infinitum, several other considerations support our conclusion that the Village acted reasonably. First, Appellees' proposed penalty for their refusal to pay the street light fee would be impossible to effectuate. Appellees' argument assumes that they only receive the benefit of one street light in the Village, that is, the street light nearest to their property. Appellees reason that the penalty for failure to pay their street light fee should have been to terminate service to that single street light. To the contrary, Appellees derive a general benefit from all of the street lights in the Village. The street lights facilitate safe passage on the Village streets and also provide increased security for citizens in their homes.

**{¶30}** Further, it would have been impossible to fashion a penalty for failure to pay the street light fee for a single delinquent utility customer without affecting all of the other customers in the Village. Street light service is not severable like water service.

**{¶31}** This indivisibility of the service was also present in S*pofforth*, supra. The city terminated Spofforth's water service for his failure to pay his garbage bill. Had the city terminated Spofforth's garbage service, the penalty would have been imposed upon Spofforth and his neighbors alike.

**{¶32}** Next, Appellees argue that street lights are not an essential service. On the contrary, street lights provide an important benefit to all of the citizens of the Village. According to Bibbo, the Village provides street light utility service to promote the health and safety of its residents. (8/2/2016 Bibbo Aff., ¶10.) The Ordinance reads, in pertinent part, "Whereas the Council of the Village of Rayland has determined that it is in the best interest of the residents of the Village of Rayland to continue to operate a street light system throughout the village in order to promote the general health, safety, and welfare of its residents and businesses. . . ." Ordinance No. 12-2012. Although street lights and water service are not so interrelated that they can be "rightfully considered one transaction," they are nonetheless part of a program for the safety and general welfare of the citizens of the Village.

**{¶33}** Finally, it is important to distinguish this case from cases where a utility customer contests the validity of a bill. Appellees could have challenged the constitutionality of the street light fee through the court system, but chose instead to flout the law. While other Village residents paid their street light fees, Appellees

continued to receive the benefit of the utility without paying for it. Moreover, Appellees were twice put on notice that their water service would be terminated for failure to pay the past due balance on their unified utility bill. They continued to flout the law at their own risk.

**{¶34}** Based upon the foregoing analysis, we find that Appellant's sole assignment of error has merit. To the extent that Appellees allege intentional acts on the part of the Village employees, or state constitutional violations, Appellant is statutorily immune from suit. Further, Appellees have failed to demonstrate the existence of a duty on the part of the Village to provide water service to a citizen that refused to pay another utility included on a unified bill. Because Appellant was engaged in a proprietary function, and Appellees have failed to show that municipal employees acted negligently in terminating their water service, the Village is immune from suit.

V. <u>Conclusion</u>

**{¶35}** For the foregoing reasons, the judgment of the trial court is reversed, and summary judgment is entered in favor of the Village on Appellees' counterclaim, on the basis of sovereign immunity. This matter is remanded to the trial court for further proceedings on the complaint.

**Waite, J., concurs.**

**Robb, P.J., concurs.**

---

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is reversed.  We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**