[Cite as *Barton v. Cuyahoga Cty,*, 2020-Ohio-6994.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CARLTON BARTON, JR., ET AL.,          :

    Plaintiffs-Appellants,          :

                            No. 109229

    v.          :

COUNTY OF CUYAHOGA, ET AL.,          :

    Defendants-Appellees.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 31, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-857905

---

### *Appearances:*

Darryl E. Pittman, *for appellants*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian R. Gutkoski, Assistant Prosecuting Attorney, *for appellees*.

MARY J. BOYLE, P.J.:

{¶ 1} Plaintiffs-appellants, Carlton Barton, Jr., Darryl E. Pittman, Esq., and Pittman, Alexander Attorneys Co. L.P.A., appeal from the trial court's denial of their motion for summary judgment and grant of summary judgment to defendants-

appellees, Cuyahoga County and Timothy McGinty, Esq. (collectively, "County").[1]

Appellants raise two assignments of error for our review:

> 1. The [court] abused its discretion in denying the Plaintiff[s]-Appellants' motion for summary judgment because no material issues of fact were in dispute, and Plaintiff[s]-Appellants were entitled to judgment as a matter of law.

> 2. The court abused its discretion in granting Defendants' Motion for Summary Judgment because material issues of fact existed and because defendants were not entitled to judgment as a matter of law.

{¶ 2} Finding no merit to the assignments of error, we affirm the trial court's judgments.

## I. Procedural History and Factual Background

{¶ 3} In January 2016, appellants filed a complaint against the County for "unlawful retention of forfeited funds," breach of contract, unjust enrichment, and fraud. The complaint states that Pittman and his firm represented Barton in a civil case against Uri Gofman and Karka, Inc. and obtained judgment against them on September 18, 2013. According to the complaint, Gofman and Karka were also convicted for racketeering activity in separate criminal proceedings and forfeited funds to the County. Appellants allege that they cooperated and shared information with the County to assist the prosecution of Gofman and Karka. According to the complaint, in exchange for their cooperation, the County agreed that if Barton succeeded in the civil case against Gofman and Karka, he could collect the funds that

---

[1] When many of the events underlying this litigation occurred, the Cuyahoga County Prosecutor was Bill Mason. Timothy McGinty succeeded Mason, and Michael O'Malley succeeded McGinty. When this case was filed in 2016, appellants named McGinty as a defendant in 2018.

Gofman and Karka forfeited. Appellants allege that they have requested the forfeited funds up to the amount of their judgment from the civil suit, but the County has refused to release the funds.

{¶ 4} In March 2016, appellants filed an amended complaint against the County for "unlawful retention of forfeited funds" pursuant to "R.C. 2923.34 and/or 2981.06," replevin, and conversion. Appellants no longer seek claims for breach of contract, unjust enrichment, or fraud. The amended complaint adds allegations that appellants made a public records request for the County's accounting information and learned that the County possesses the forfeited funds.

{¶ 5} The County moved to dismiss the amended complaint, arguing in part that it was immune from all of appellants' claims. The trial court denied the motion, and the County appealed. This court affirmed, finding that the claims were for equitable relief, and R.C. Chapter 2744 therefore did not bar the claims "at this stage of the litigation." *Barton v. Cuyahoga*, 8th Dist. Cuyahoga No. 105008, 2017-Ohio-7171, ¶ 31-32.

{¶ 6} In August and September 2019, the parties filed cross-motions for summary judgment. The following facts are from the evidence supporting the motions.[2]

{¶ 7} In 2005, Barton saw a newspaper advertisement looking for investors to purchase homes with no money down. He called the number in the advertisement

---

[2] The County argues that much of appellants' support for their summary judgment motion is improper under Civ.R. 56(C). Our recitation of the facts comes from only evidence that is proper under Civ.R. 56(C), which we discuss more thoroughly below.

and worked with Realty Corporation of America to purchase seven rental properties from an investor "who was trying to liquidate his assets."[3] Barton selected the properties from a list, visited them for less than an hour each, and did not have them inspected. When Barton received copies of the executed purchase agreements, he noticed that inaccurate values were added after he signed them. For example, Barton purchased the homes with no money down, but the purchase agreements reflected that Barton had made down payments. Meanwhile, the properties Barton purchased needed substantial repairs. He received rental payments from the tenants, but he could not keep up with the cost of maintaining the properties. He defaulted on the mortgages and lost all the properties to foreclosure by 2008.

{¶ 8} In 2008, Barton brought a "mortgage fraud racketeering" lawsuit against Realty Corporation of America and others involved in flipping the properties, including Gofman, Real Asset Fund, Inc., and Karka, Inc. Gofman formed Real Asset Fund and used the company to purchase, renovate, manage, and sell the properties that Barton purchased. Gofman also formed Karka as a holding company that acquired Real Asset Fund as a subsidiary. In 2010, Barton voluntarily dismissed his lawsuit and five months later refiled it against 22 defendants, including Gofman, Karka, and Real Asset Fund. *Barton Jr. v. Realty Corp. of Am., et al.*, Cuyahoga C.P. No. CV-10-739282.

---

[3] Barton purchased more than seven rental properties, but only seven were included in his civil lawsuit.

{¶ 9} In 2010 and 2011, the state of Ohio prosecuted Gofman and Karka in separate criminal proceedings. Both pleaded guilty to engaging in a pattern of corrupt activity in violation of R.C. 2923.32, and the trial court ordered them to forfeit funds to the state. Barton and Pittman knew about the criminal proceedings but were not made aware of the forfeiture orders, did not file anything to delay the forfeiture orders, and did not seek any of the forfeited funds at the time.

{¶ 10} The fiscal director of the Cuyahoga County's Prosecutor's Office ("CCPO"), James Ginley, stated in an affidavit that in late 2012 and early 2013, Ohio "was the drawer of checks" sent to CCPO "relative to forfeited funds" by Gofman and Karka. CCPO deposited the checks into a bank account that it maintains "for its share of proceeds from criminal forfeiture orders," called the "Law Enforcement Trust Fund" ("LETF account"). CCPO has never "segregated any deposits made" into the LETF account, and McGinty "significantly spent down" the balance of the LETF account. Ginley averred that he reviewed the LETF account records, which he says show that McGinty had spent the deposits related to Gofman and Karka's forfeited funds or, "at a minimum," the funds are "no longer traceable" in the LETF account.

{¶ 11} In 2013 in Barton's civil proceeding, a trial ensued on Barton's claims against Gofman, Karka, and Real Asset Fund. The defendants did not appear, but their counsel appeared on their behalf. The trial court took judicial notice of the guilty pleas that Gofman, Karka, and Real Asset Fund entered in separate criminal cases and found that they engaged in a pattern of corrupt activity in violation of

R.C. 2923.32(A)(1) and (A)(3). The trial court found Barton's damages to be $52,840 for mortgage payments and repairs on the properties he purchased because of the three defendants' racketeering activities. The trial court determined, pursuant to R.C. 2923.34(E), that because Barton proved his claim by clear and convincing evidence, "he is entitled to have those damages trebled to $158,520." The trial court held a separate hearing to determine attorney fees and found that Barton's "counsel is entitled to" $284,193.30 in attorney fees and $15,861.05 in court costs. The trial court ordered that Gofman, Karka, and Real Asset Fund are jointly and severally liable for the damages. Appellants argued in their summary judgment motion that they are entitled to a portion of the funds that Gofman and Karka forfeited to satisfy their civil judgment.

{¶ 12} On October 30, 2019, the trial court entered two judgments: one denied appellants' summary judgment motion, and the other granted the County's. It is from these judgments that appellants timely appeal.

## II. County's Motion to Dismiss Appeal

{¶ 13} The County argues that we should dismiss appellants' appeal because (1) appellants failed to timely attach to the notice of appeal the trial court's judgments denying appellants' summary judgment motion and granting the County's summary judgment motion; (2) appellants failed to cite to "record evidence"; (3) the evidence on which appellants relied in their summary judgment motion did not meet Civ.R. 56(C)'s standards; and (4) Pittman's law firm is out of business and lacks standing to appeal. The County's arguments regarding

appellants' evidence do not affect the validity of the appeal but rather are considerations on the merits. We also need not address the County's argument regarding Pittman's firm because we find the firm is not entitled to damages. Therefore, we will address only the County's first two arguments here.

{¶ 14} First, parties must attach to the notice of appeal "a copy of the judgment or order appealed from (journal entry) signed by the trial judge and time-stamped with the date of receipt by the clerk. The subject attachments are not jurisdictional but their omission may be the basis for a dismissal." Loc.App.R. 3(B)(1); *see also N. Chem. Blending Corp. v. Strib Indus.*, 8th Dist. Cuyahoga No. 105911, 2018-Ohio-3364, ¶ 24 ("[T]he failure to attach a copy of the order being appealed from is not a jurisdictional defect."). Here, appellants did not attach the trial court judgments to the notice of appeal. This court, however, sua sponte ordered appellants to do so, and appellants then filed the two judgments. The County later moved to dismiss appellants' appeal for their failure to initially attach the judgments, which we denied. The County now makes the same argument, and we again reject it. The failure to attach a judgment entry to a notice of appeal is not a jurisdictional defect, and appellants supplemented the record with the judgment entries. Loc.R. 3(B)(1); *N. Chem. Blending Corp.* at ¶ 24.

{¶ 15} Second, the appellant's brief must cite to the "parts of the record on which appellant relies." Ohio App.R. 16(A)(7). An appellate "court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based[.]" App.R. 12(A)(2).

Appellants maintain that they need not use a particular format to cite to the record and that the record on appeal is incomplete. After review of the record, we find that the record is complete, and appellants' brief contains almost no citations, in any format. However, we have the discretion to review an assignment of error despite failure to cite to the record. *Najjar v. Najjar*, 8th Dist. Cuyahoga No. 91789, 2009-Ohio-3880, ¶ 9, citing App.R. 12(A)(2). In our discretion, we will consider the assignments of error.

{¶ 16} Accordingly, we deny the County's motion to dismiss and address the merits of the appeal.

### III. Opposing Motions for Summary Judgment

{¶ 17} In their two assignments of error, appellants argue that the trial court erred in denying their summary judgment motion and granting the County's because the trial court improperly applied Ohio's forfeiture law. The parties' arguments for both assignments of error are intertwined, and we will address the assignments of error together.

{¶ 18} We review a trial court's judgment granting a motion for summary judgment de novo. *Citizens Bank, N.A. v. Richer*, 8th Dist. Cuyahoga No. 107744, 2019-Ohio-2740, ¶ 28. Thus, we independently "examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997). We therefore review the trial court's order without giving any deference to the trial court. *Citizens Bank* at ¶ 28. "On appeal, just as the trial court must do, we must consider all facts

and inferences drawn in a light most favorable to the nonmoving party." *Glemaud v. MetroHealth Sys.*, 8th Dist. Cuyahoga No. 106148, 2018-Ohio-4024, ¶ 50.

{¶ 19} Pursuant to Civ.R. 56(C), summary judgment is proper where (1) "there is no genuine issue as to any material fact," (2) "the moving party is entitled to judgment as a matter of law," and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Trial courts should award summary judgment only after resolving all doubts in favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

### A. Appellants' Summary Judgment Evidence

{¶ 20} We must first address the County's argument that appellants' summary judgment evidence fails to meet Civ.R. 56(C)'s standard. The County filed a motion to strike appellants' summary judgment exhibits, and the trial court denied the motion without opinion. Specifically, the County challenges: (1) appellants' response to a motion for a protective order filed in this case; (2) uncertified copies of the forfeiture orders in Gofman and Karka's criminal cases; (3) the County's combined interrogatories and document production; (4) an unauthenticated memorandum of understanding; (5) unauthenticated County financial records; and

(6) Barton and Pittman's affidavits that contradict deposition testimony and purport to incorporate the facts in their preliminary statement.

{¶ 21} Civ.R. 56(C) provides an exclusive list of materials that parties may use to support a motion for summary judgment:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

In applying this rule, Ohio courts have consistently held that "if an exhibit or item of evidence does not fall within one of the cited categories of permissible materials, it can only be viewed when it has been incorporated by reference into an affidavit which satisfies Civ.R. 56(E)." *McGhan v. Vettel*, 11th Dist. Ashtabula No. 2008-A-0036, 2008-Ohio-6063, ¶ 23; *LTF 55 Props. v. Charter Oak Fire Ins. Co.*, 8th Dist. Cuyahoga No. 108956, 2020-Ohio-4294, ¶ 33.

{¶ 22} Civ.R. 56(E) sets forth the criteria for affidavits:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.

"The affidavit must properly authenticate the evidence, which requires the affiant to have personal knowledge 'gained through firsthand observation or experience.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26, quoting *Black's Law Dictionary* 875 (7th Ed.1999).

{¶ 23} Decisions concerning the admission or exclusion of evidence are within the discretion of the court and will not be reversed absent an abuse of that discretion. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 20. An abuse of discretion is shown when a decision is unreasonable, that is, when there is no sound reasoning process that would support the decision. *AAA Ents. v. River Place Community*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 24} First, appellants' response to a motion for a protective order is not proper summary judgment evidence. *See Meadows v. Freedom Banc, Inc.*, 10th Dist. Franklin No. 03AP-1145, 2005-Ohio-1446, ¶ 20 ("The parties' briefs and memoranda of law are not considered evidence under Civ.R. 56(C)"); *Hickman v. Ford Motor Co.*, 52 Ohio App.2d 327, 370 N.E.2d 494 (8th Dist. 1977) ("It is clear that the briefs of the parties and memorandums of law are not properly considered evidence under Civil Rule 56(C).").

{¶ 25} Second, the uncertified forfeiture orders from Gofman and Karka's criminal cases are likewise improper summary judgment evidence. Civ.R. 56(C). However, James Ginley, the County's fiscal director, stated in an affidavit that based upon his review of records available to him, the County "received criminal forfeiture proceeds pertaining to the *State v. Karka, Inc., et al.* criminal cases, CR 10-536877 or *State v. Uri Gofman, et al.* CR 11-557589, in late 2012 and early 2013" and that "Judge Gaul ordered funds forfeited to the State." The relevant evidence from the

uncertified forfeiture orders is therefore also in the record via evidence that complies with Civ.R. 56(C).

{¶ 26} Third, we agree with the County that Civ.R. 56(C) does not permit appellants to attach documents that the County produced in discovery because the documents were not "placed in the record" through a deposition or affidavit. Civ.R. 56(C) includes as proper summary judgment evidence answers to interrogatories. However, Civ.R. 56(C) does not include document production, unless the documents produced have been incorporated by reference into an affidavit that satisfies Civ.R. 56(E). *See Smith v. Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, ¶ 19-22 (trial court did not abuse its discretion in excluding unauthenticated documents produced in discovery because "Civ.R. 56(C) plainly states that '[n]o evidence or stipulation may be considered except as stated in this rule.'"). Appellants submitted the County's document production as a supplemental exhibit to their summary judgment motion without incorporating it into an affidavit that satisfies Civ.R. 56(C).

{¶ 27} Fourth, Barton's affidavit fails to authenticate the memorandum of understanding. The memorandum states that the Ohio Organized Crime Investigations Commission established "an organized crime task force #08-1 to investigate organized criminal activity." The body of the memorandum states that it is being executed by the Commission and six law enforcement agencies, including the County. In the version of the memorandum attached to appellants' summary judgment motion, certain words and sections are circled, and only the County had

signed it. Barton's affidavit specifically states that Barton "had no knowledge" of the memorandum, and the affidavit contains no basis for Barton to have personal knowledge about it.

{¶ 28} Fifth, we agree with the County that the trial court abused its discretion by failing to strike records titled "Cuyahoga County Prosecutor's Office Cash Account Register For the Period From Jan 1, 2012 to Dec 31, 2013." "A witness authenticating records need not have personal knowledge of the creation of the document," but "the witness must have personal knowledge of the record-keeping system in which the documents were maintained." *Bank of N.Y. Mellon v. Roulston*, 8th Dist. Cuyahoga No. 104908, 2017-Ohio-8400, ¶ 15-16 (finding that a loan servicing agent's affidavit stating that she reviewed records from a borrower's previous loan servicer did not authenticate the records because it did not state that the agent was familiar with the previous servicer's record-keeping system.). Pittman averred that the records are "a true and accurate copy of [a] Cash Account Register I received from the Prosecutor's Office both in response to a Public Information Access Request and in response to [appellants'] discovery request." The records are incomplete, starting at page two of eight and ending at page seven of eight, and contain handwritten notations. Although Pittman has personal knowledge of where he received the documents, his affidavit does not demonstrate that he has personal knowledge of the record-keeping system in which the documents were maintained, that the documents are what they purport to be, that they were made in the ordinary course of business, or that the information contained in the documents is accurate.

{¶ 29} Sixth, the County maintains that Barton and Pittman improperly incorporated the preliminary statement of their summary judgment motion into their affidavits without listing out each fact individually. Barton and Pittman both aver that they have reviewed the facts in the Preliminary Statement, "and they are true as I verily believe." The County cites to *State ex rel. Simonetti v. Summit Cty. Bd. of Elections,* 151 Ohio St.3d 50, 2017-Ohio-8115, 85 N.E.3d 728, ¶ 11, for the proposition that an affidavit made "to the best of" someone's "personal knowledge and information" is insufficient. This citation is misplaced because *Simonetti* involves affidavits supporting original-action complaints, not affidavits pursuant to Civ.R. 56(E). "The statement in the affidavit that the facts set forth in the preliminary statement are incorporated and 'are true to the best of my knowledge and belief' is sufficient to constitute an affidavit." *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467-468, 423 N.E.2d 105 (1981). Although such a statement "leaves much to be desired," the trial court has discretion to accept it in support of a motion for summary judgment. *Id.* at 468.

{¶ 30} Finally, Barton's affidavit contradicts his deposition testimony. In his opposition to the County's summary judgment motion, Barton asserts that he met in person with former County prosecutor, Bill Mason, while attending a police rally, and Barton's affidavit states that he believes the facts in the motion to be true. But in his deposition, Barton testified that he never met with Mason. "[A]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of

material fact to defeat a motion for summary judgment." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, paragraph three of the syllabus. Barton provides no explanation for the contradiction, and Barton's assertion that he met with Mason cannot create a genuine issue of material fact.

{¶ 31} Accordingly, we find that the trial court abused its discretion in failing to strike appellants' response to the County's motion for a protective order, the uncertified court documents, the memorandum of understanding, the unauthenticated County financial records, and the County's document production. Accordingly, we have not considered this evidence in our de novo review.

### B. Statutory Claim

{¶ 32} Appellants title their first claim against the County as "unlawful retention of forfeited funds" and base the claim on "R.C. 2923.34 and/or 2981.06."[4] They maintain that R.C. 2923.34(M)(1) authorizes them to recover the funds that Gofman and Karka forfeited to satisfy appellants' civil judgment against them, and that R.C. 2981.04(E)(3) provides a private right of action against the County.

{¶ 33} R.C. 2923.34(A) authorizes persons injured by a pattern of corrupt activity violating R.C. 2923.32 to initiate a civil proceeding against any person who has violated R.C. 2923.32. The statute states:

> Any person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code may institute a civil proceeding in an appropriate court seeking relief from any person whose conduct

---

[4] R.C. 2981.06 provides the procedures after an entry of a forfeiture order. It is unclear how this section supports a claim for "unlawful retention of forfeited funds," and appellants do not explain how it applies. We therefore do not address this provision.

violated or allegedly violated section 2923.32 of the Revised Code or who conspired or allegedly conspired to violate that section, except that the pattern of corrupt activity alleged by an injured person or person threatened with injury shall include at least one incident other than a violation of division (A)(1) or (2) of section 1707.042 or division (B), (C)(4), (D), (E), or (F) of section 1707.44 of the Revised Code, of 18 U.S.C. 1341, 18 U.S.C. 1343, 18 U.S.C. 2314, or any other offense involving fraud in the sale of securities.

{¶ 34} R.C. 2923.34(M)(1) provides that anyone who succeeds in such a civil proceeding has a right to the property criminally forfeited if the civil action is brought within 180 days after the forfeiture order:

> Any person who prevails in a civil action pursuant to this section has a right to any property, or the proceeds of any property, criminally forfeited to the state pursuant to section 2981.04 of the Revised Code or against which any fine under section 2923.32 of the Revised Code or civil penalty under division (H) of this section may be imposed.
>
> The right of any person who prevails in a civil action pursuant to this section, other than a prosecuting attorney performing official duties under that section, to forfeited property, property against which fines and civil penalties may be imposed, and the proceeds of that property is superior to any right of the state, a municipal corporation, or a county to the property or the proceeds of the property, if the civil action is brought within one hundred eighty days after the entry of a sentence of forfeiture or a fine pursuant to sections 2923.32 and 2981.04 of the Revised Code or the entry of a civil penalty pursuant to division (H) of this section.
>
> The right is limited to the total value of the treble damages, civil penalties, attorney's fees, and costs awarded to the prevailing party in an action pursuant to this section, less any restitution received by the person.

{¶ 35} Here, Barton prevailed against Gofman and Karka on his allegations that they violated R.C. 2923.32. Barton therefore has a right to the proceeds that Gofman and Karka criminally forfeited up to the amount of the total value of his damages, attorney fees, and costs. Barton's right to the forfeited property is superior

to any right of the state or county if Barton brought his civil action pursuant to R.C. 2923.34(A) within 180 days after the forfeiture order.

{¶ 36} The County argues that appellants' statutory claim fails because (1) appellants did not bring this lawsuit against it within 180 days, (2) appellants have no private cause of action for their statutory claim; (3) the two-year statute of limitations for claims against political subdivisions bars appellants' claim, (4) the County is immune to appellants' claim, and (5) appellants should be seeking the forfeited funds from Ohio instead of the County. The two-year statute of limitations and the County's potential political subdivision immunity apply only to tort claims for damages, so neither bars appellants' statutory claim. *See Thornton v. Cleveland*, 176 Ohio App.3d 122, 2008-Ohio-1709, 890 N.E.2d 353, ¶ 8 (8th Dist.).

{¶ 37} We disagree with the County's interpretation of R.C. 2923.34(M)(1) that appellants had 180 days after the forfeiture orders to file this lawsuit against the County to recover the forfeited funds. The 180-day requirement pertains to Barton's civil action against Gofman and Karka (which he filed before the forfeiture orders), not to appellants' action against the County to recover the funds.

{¶ 38} Regardless, appellants have no private right of action to sue the County to recover the forfeited funds. "In determining whether statutes may create a private cause of action for enforcement, the Ohio Supreme Court has held that a 'statutory policy' may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio Legislature."

*Ayers v. Cleveland*, 2017-Ohio-8571, 99 N.E.3d 1269, ¶ 30 (8th Dist.), quoting *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 249, 348 N.E.2d 144 (1976).

{¶ 39} Appellants argue that R.C. 2981.04(E)(3) creates a private right of action because it "provides that any person with interest in the forfeited property may *petition* the court to adjudicate the validity of its sake in the property." (Emphasis sic.) Appellants' reliance on R.C. 2981.04(E)(3) is misplaced. R.C. 2981.04 provides the procedure for criminal forfeiture proceedings. Pursuant to R.C. 2981.04(D), after the entry of a forfeiture order, the prosecutor "shall attempt to identify any person with an interest in the property subject to forfeiture by searching appropriate public records and making reasonably diligent inquiries." The prosecutor must also publish notice of the forfeiture "in a newspaper of general circulation in the county in which the property was seized" once a week for two consecutive weeks. R.C. 2981.04(D). Any person who has an interest in the forfeited property may file in the court that issued the forfeiture order a petition or an affidavit asserting their interest, and the petition or affidavit must be filed within thirty days of the person's receipt of notice under R.C. 2981.04(D). R.C. 2981.04(E)(1)(a); R.C. 2981.04(E)(2)(a). R.C. 2981.04(E)(3) provides that the court must hold a hearing if it receives such a petition or affidavit and outlines the procedure for the hearing.

{¶ 40} In other words, R.C. 2981.04(E)(3) gives parties with an interest in forfeited property a right to a hearing in the court that issued the forfeiture order within thirty days of the forfeiture order. It does not authorize a party to sue a county

to recover forfeited funds at all, let alone four years after the forfeiture orders and three years after obtaining a legal right to the forfeited property.

{¶ 41} Appellants maintain that the County "committed wholesale violations of [R.C.] [C]hapter 2981" by failing to give them notice of Gofman and Karka's forfeiture proceedings, to disburse the funds to them as victims, to hold the funds in a LETF account, and to maintain records regarding the funds. There is no dispute that appellants did not receive notice of the forfeiture orders and that appellants did not file any petitions or affidavits in Gofman or Karka's criminal cases. However, at the time of the forfeiture orders in Gofman and Karka's cases, appellants had no lawful interest in the forfeited funds, so the County prosecutor had no duty to specifically notify them. The forfeiture orders contained no order to pay restitution to appellants as victims. And the affidavit of the County's fiscal director shows that the County did deposit the funds into its LETF account and maintained the account's records. More importantly, the County's alleged violations of R.C. Chapter 2981 do not create a private, statutory cause of action.

{¶ 42} Accordingly, appellants have no private cause of action to bring their statutory claim for "unlawful retention of forfeited funds" against the County, and we need not address the parties' arguments about whether appellants should be seeking the forfeited funds from Ohio.

{¶ 43} We find that there are no genuine issues of material fact, reasonable minds can come to only one conclusion in favor of the County, and the County is entitled to judgment as a matter of law on appellants' statutory claim for "unlawful

retention of forfeited funds." The trial court therefore did not err in denying appellants' summary judgment motion and granting the County's summary judgment motion on this claim.

### C. Tort Claims

{¶ 44} In addition to the statutory claim, appellants also bring claims for replevin and conversion. Appellants did not seek summary judgment on these claims, but the County did, and the County contends that appellants abandoned the claims. The County argues that appellants seek legal damages, as opposed to equitable relief, and the claims are therefore time barred. The County also maintains that it is immune to appellants' claims as a political subdivision and as a prosecuting entity.

{¶ 45} Tort actions against political subdivisions to recover damages must be brought within two years after the cause of action accrued. R.C. 2744.04(A). The parties agree that the County is a political subdivision. However, this two-year statute of limitations does not apply to equitable claims. *See Bd. of Edn. of the Loveland City School Dist. v. Bd. of Trustees of Symmes Twp.*, 2018-Ohio-1731, 111 N.E.3d 833, ¶ 27 (1st Dist.) (R.C. 2744.04 two-year statute of limitations did not apply to claims for equitable relief). Therefore, whether appellants' claims are time barred depends on whether they seek equitable relief or monetary damages.

{¶ 46} In our previous decision in this case, we determined that appellants' claims are for equitable relief, not monetary damages. *Barton*, 8th Dist. Cuyahoga No. 105008, 2017-Ohio-7171, at ¶ 31. However, after we released our opinion in

2017, the Ohio Supreme Court decided *Cleveland v. Ohio Bur. of Workers' Comp.*, 159 Ohio St.3d 459, 2020-Ohio-337, 152 N.E.3d 172, which clarified the distinction between legal and equitable relief.

{¶ 47} In *Ohio Bur. of Workers' Comp.*, an employer alleged that it paid excessive premiums to the Ohio Bureau of Workers' Compensation ("BWC") and that it was entitled to reimbursement of the overpayments. The Ohio Supreme Court was asked to determine whether the claim to recover overpaid premiums was an equitable claim or a legal claim. *Id.* at ¶ 9. The court explained that a claim seeks legal damages, as opposed to equitable relief, "if there is not a specifically identifiable fund, or traceable items on which the money from the fund was spent[.]" *Id.* at ¶ 16. A claim is a legal one if it seeks "to recover from a defendant's general assets rather than 'specifically identified funds that remain in the defendant's possession.'" *Id.*, quoting *Montanile v. Natl. Elevator Industry Health Benefit Plan Bd. of Trustees*, 577 U.S. 136, 136 S.Ct. 651, 658, 193 L.Ed.2d 556 (2016). Equitable claims, however, generally "'give or enforce a right to or over some particular thing.'" *Id.*, quoting *Montanile* at 658-659.

{¶ 48} Even though BWC kept track of the employer's premium payments, the payments "went into a general insurance fund" and "were not kept separate from payments made by other public employers." *Id.* at ¶ 17. When the employer's premium went into the general fund, "it became comingled" with other employers' payments. *Id.* The court found that "[i]t is inconceivable how money belonging to" the employer could be clearly traced to certain funds in the BWC's possession. *Id.*

The court further determined that BWC had spent the payments and that the payments were "no longer in the BWC's possession and cannot be recovered by a suit in equity." *Id.* The court held that the employer's claim therefore "sounds in law." *Id.*

{¶ 49} Here, Ohio sent checks to CCPO for the proceeds from the funds that Gofman and Karka forfeited. CCPO deposited these checks into its LETF account, where it also deposited other proceeds from other criminal forfeiture orders. Gofman and Karka's forfeited funds were not kept separate from the funds of other forfeiture proceeds within CCPO's LETF account. Since CCPO deposited the funds in late 2012 and early 2013, the account balance of the LETF account has been "significantly spent down." Gofman and Karka's forfeited funds have been comingled with other forfeited funds and have been used in the seven years that have passed since the County received them. The funds are not specifically identifiable and are not in the County's possession. Therefore, pursuant to *Cleveland v. Ohio Bur. of Workers' Comp.*, the funds cannot be recovered by a suit in equity. Appellants therefore cannot seek equitable relief, and their claims are for monetary damages.

{¶ 50} Accordingly, the two-year limitation period in R.C. 2744.04(A) applies to appellants' tort claims. Barton succeeded in his civil action against Gofman and Karka in 2013 but did not bring this lawsuit against the County until 2016, over two years later. Appellants' tort claims are time barred, and we need not address the County's immunity and abandonment arguments.

**{¶ 51}** We therefore find that there are no genuine issues of material fact, reasonable minds can come to only one conclusion in favor of the County, and the County is entitled to judgment as a matter of law on appellants' replevin and conversion claims. The trial court therefore did not err in denying appellants' summary judgment motion and granting the County's summary judgment motion on these claims.

**{¶ 52}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
MARY EILEEN KILBANE, J., CONCUR