[Cite as *Litsinger v. Rootstown Twp. Bd. of Trustees*, 2024-Ohio-781.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

DONALD LITSINGER, et al.,

        Plaintiffs-Appellants,

    - vs -

THE ROOTSTOWN TOWNSHIP
BOARD OF TRUSTEES,

        Defendant-Appellee.

**CASE NO. 2023-P-0067**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2022 CV 00352

## O P I N I O N

Decided: March 4, 2024
Judgment: Affirmed

*Jaqueline Bollas Caldwell*, *John B. Schomer* and *Kyle W. Rea*, Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, 4775 Munson Street, N.W., P.O. Box 36963, Canton, OH 44735, and *Matthew W. Onest*, Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, 6715 Tippecanoe Road, 2C, Canfield, OH 44406 (For Plaintiffs-Appellants).

*Chad E. Murdock*, P.O. Box 334, Rootstown, OH 44272 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1} Plaintiffs-appellants, Donald and Cathy Litsinger, appeal the judgment of the Portage County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, the Rootstown Township Board of Trustees. For the following reasons, we affirm the judgment of the court below.

{¶2} On May 16, 2022, the Litsingers filed a Civil Complaint against Rootstown and other defendants who are not parties to this appeal. On August 30, 2022, the Litsingers filed a First Amended Complaint against Rootstown only. On April 3, 2023, the

Litsingers, by stipulation, limited their claims against Rootstown to the following: breach of contract and, in the alternative, promissory estoppel; negligence; negligent misrepresentation; right of contribution; declaratory judgment; and injunctive relief. On April 11, 2023, Rootstown moved for summary judgment.

{¶3} On July 31, 2023, the trial court granted Rootstown's Motion for Summary Judgment. The court summarized the litigation as follows:

> In this instant case, Plaintiff is seeking recovery from Defendant for dumping "ditch" dirt on Plaintiff's real property. Plaintiff is seeking to have Defendant pay the cost to remediate the environmental violations for which Plaintiff has been cited. Plaintiff claims that Defendant, through its road supervisor, entered into a contract for disposal of dirt and other debris on Plaintiff's property.

> Conversely, Defendant claims that its road supervisor did not have agency authority to enter into any contracts and any discussions between the road supervisor and Plaintiff were personal. Defendant also claims that Plaintiff sought out the "ditch" dirt from Defendant and directed where the "ditch" dirt was to be placed. Defendant also provided free "ditch" dirt to any township resident who requested same. Defendant also argues that the "ditch" dirt is not an item for which Plaintiff has been cited.

> In the instant matter, Plaintiff and the road supervisor had a personal relationship. They were friends and both were involved in forms of construction. During a personal visit to Plaintiff's property, the road supervisor noted a large hole, which later became the dumping site for construction debris and "ditch" dirt. During this personal visit the road supervisor indicated that he could get "ditch" dirt to put into the big hole. Thereafter, both the road supervisor and the Plaintiff dumped construction debris in the hole. Both Plaintiff and the road supervisor were acting in their own personal best interest by avoiding construction disposal fees and inconvenience by dumping their personal business debris on Plaintiff's property.

> The "ditch" dirt was provided by Defendant at Plaintiff's request. That "ditch" dirt was directed to a specific dumping area by Plaintiff and was later leveled by Plaintiff. Defendant would provide free "ditch" dirt to any township resident that asked for it. The "ditch" dirt provided by Defendant was used to cover some of the personal business construction debris of both Plaintiff and the road supervisor.

2

{¶4} On August 24, 2023, the Litsingers filed a Notice of Appeal. On appeal, they raise the following assignment of error: "The trial court erred in granting summary judgment to the Appellee, the Rootstown Board of Trustees, on Appellant's claims against it for breach of contract, promissory estoppel in the alternative to breach of contract, negligence, negligent representation, declaratory judgment, and injunctive relief."

{¶5} Summary judgment is appropriate when "there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law," i.e., when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C). An appellate court's "review of a summary-judgment ruling is de novo." *Fradette v. Gold*, 157 Ohio St.3d 13, 2019-Ohio-1959, 131 N.E.3d 12, ¶ 6.

{¶6} The first issue to be addressed is whether a genuine issue of material fact exists as to whether a binding contract existed between the Litsingers and Rootstown. "The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration." *Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 14.

{¶7} With respect to the formation of the contract at issue, Donald Litsinger provided the following testimony by affidavit:

> 3. In 2000 I spoke with Darrell Stephens, the Road Superintendent for the Township. Mr. Stephens, on behalf of the Township, offered to have the Township dump dirt on my Property in a hole that he pointed out. He offered to have the Township do that and guaranteed and promised me that it would be legal. In exchange I

3

promised him the Township could dump on my Property and I would give the Township and its drivers access to my Property and they would dump in the area that Mr. Stephens had identified and promised would be legal for such purpose. I would thereby receive fill material to fill the identified hol[e] an[d] build up my Property, and the Township would benefit by and have a disposal site that would not cost them any money. I allowed them to dump without any charge or fee. Had Mr. Stephens not promised and guaranteed me that the Township's dumping was and would be legal, I would never have allowed [t]he Township to dump on my [P]roperty. Nor would I have dumped on the Property, [n]or would I have allowed others to dump on the [P]roperty.

4. Based upon the communications above and as I testified to in my deposition, Mr. Stephens and I shook hands and I accepted his offer to supply dirt and do so in a manner that was legal. There was never any money involved or discussed, because I was going to get a field leveled and th[e] Township would be able to dispose of dirt with[out] having to pay or be charged. I knew at that time that Mr. Stephens was the acting Township Road Superintendent and thought, based upon his statements and assurances that he had the authority and responsibility to bind the Township to the agreement identified above and in my deposition. I also thought that since he was the Township's Road Superintendent, he would have the experience, expertise and could be relied upon to keep the promises he made and that he knew what was legal. Our agreement was performed, for over 19 years and the Township and all its drivers (including the later Road Superintendent – Bill Hahn) dumped Township dirt on my Property for over 19 years in the area Mr. Stephens had guaranteed was legal, most of what they dumped was not legal. The Township dumped significant amounts of material into the wetland over many years, with this dumping of fill activity continuing to occur by the Township as recently as 2019. The contract itself and my understanding of it were shown by what Mr. Stephens told me and what the Township did to perform the contract over a 19-year period until 2019. Some years the Township dumped more ditch dirt on the Property and other years the Township dumped less dirt, but the dumping was always in accord with the oral agreement.

{¶8} We agree with the trial court and Rootstown that the agreement described by Litsinger does not constitute an enforceable contract although for different reasons. Assuming, arguendo, that Stephens entered the agreement on behalf of Rootstown with apparent authority to do so, the agreement is unsupported by valid consideration on the

4

part of Rootstown. The Supreme Court of Ohio "has long recognized the rule that a contract is not binding unless supported by consideration." *Lake Land* at ¶ 16. "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Id.* "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.*; *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 17 ("whether there is consideration at all is a proper question for a court").

{¶9} In the present case, as noted by the trial court, it was the policy of Rootstown to provide free "ditch" dirt to any township resident that asked for it. Thus, the Litsingers' promise to provide Rootstown with a site to dump its dirt without fee or charge was an illusory benefit to the township. The uncontradicted deposition testimony of Rootstown road superintendent Hahn demonstrates that any agreement to allow Rootstown to dump on their property was superfluous:

> [A]s a township, we have to go out along the roads if somebody is having water issues -- you know, the ditch is silt in with dirt and wheat. We go out, we take a -- at that time it was a backhoe, but now we have an excavator -- we simply scoop it out, place it in the back of the dump truck. We piled [it] in our yard, which is down at our salt shed, because we make numerous trips. And then after it sits there for a while, you know, any resident that would like dirt is more than welcome to the dirt, and we disperse it that way. * * * It is the Township's practice. * * * Anyone living in the Township is allowed to have the ditch dirt, that's the county practice, that was state-wide practice with ODOT. We just followed in line with them.

{¶10} Hahn also described the purposes for which township residents would avail themselves of the dirt. When residents would install culvert pipes in their ditches, ditch dirt would be used to cover the pipes. Farmers, such as the Litsingers, and other

5

residents used the free dirt for leveling and "so they could fill in holes around their yards." Rootstown also used the ditch dirt for its own purposes, such as the construction of a retaining wall. Thus, the agreement for Rootstown to provide dirt to the Litsingers in exchange for a place to dump it was simply a description of what was already the township's practice with respect to any resident that wanted the dirt. It did not constitute a bargained-for legal benefit or detriment.

{¶11} The Litsingers assert that the Township Trustees were authorized by statute to appoint Stephens as Road Superintendent with authority to enter into the purported contract with them. R.C. 5571.02(C) ("township trustees * * * may appoint some competent person * * * to have charge and maintenance and repair of roads within the township"). They further maintain that, "in addition to the duties specifically enumerated in the statute [regulating townships], the Board [of township trustees] may also assign to the administrator any 'duties under its control.'" *Oberer Land Developers, Ltd. v. Sugarcreek Twp.*, S.D.Ohio No. 3:19-cv-82, 2020 WL 1466184, *11, citing R.C. 505.032. Such duties would include the disposition of dirt collected from drainage ditches. R.C. 505.10(A)(7) ("[i]f the board of township trustees determines that township personal property is not needed for public use * * *, the board may discard of salvage that property"). As interpreted by the Litsingers, these authorities demonstrate that, "where authority is duly delegated to township officials by township trustees, those officials may, in the scope of their position, contract on behalf of the Township." Brief of Appellants at 20. We need not address these contentions inasmuch as, for the reasons stated above, there was no enforceable contract between the Litsingers and the Township irrespective of Stephens' ability to contract on behalf of the Township.

6

Case No. 2023-P-0067

{¶12} The Litsingers argue in the alternative that, if no contract existed, they are entitled to recover under a theory of promissory estoppel, specifically, "the Litsingers presented evidence that the promise they relied on was Road Superintendent Stephens' promise, as the Road Superintendent, that the Township's dumping of dirt on [their] Property was completely legal." Brief of Appellants at 21. Donald described Stephens' promise as follows in his deposition testimony:

> [Stephens] confirmed to me that it was perfectly legal to fill a hole on your property. So I mean, that was the guy who was in charge so I * * *. [H]e told me that it was, you know, fine to fill a hole up and it was perfectly legal. Because I did ask him, I don't want to get in no trouble. * * * But he did guarantee me we wouldn't get in no trouble so -- and it was perfectly legal.

{¶13} Although the Litsingers argue for the application of promissory estoppel, the proper legal doctrine applicable to this situation is equitable estoppel. As noted by the Supreme Court of Ohio, "[p]romissory is distinct from equitable estoppel in that the representation at issue is promissory rather than a representation of fact." (Citation omitted.) *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 24. Stephens' statement that it was legal for the township to dump dirt on the Litsingers' property was not a promise as commonly understood in contract law as a statement of intent. *See* 1 *Williston on Contracts*, Section 1:2 (4th Ed.2023) ("[a] 'promise' is a manifestation of intention to act or refrain from acting in specified way"); 17 Corpus Juris Secundum, Contracts, Section 2 (August 2023 Update) ("[a] promise is the declaration by any person of his or her intention to do, or to forbear from anything at the request, or for the use, of another"). The statement at issue herein was a representation of fact, i.e., it was legal to dump dirt on the property, rather than promissory. As further illustrated by the Supreme Court:

7

In the typical equitable estoppel case, the defendant had represented an existing or past fact to the plaintiff, who reasonably and in ignorance of the truth relied upon the representation to his detriment. In a number of cases, however, the representation was not as to a fact but as to *an intention*; where the party making the representation asserted that he would do or refrain from doing something *in the future* he made a promise, though it might also be considered a representation of his intention. If the promise was gratuitous, not backed by consideration, the promisee would have no remedy. No equitable estoppel could exist since the promisee had not relied upon a statement of fact; no action for breach of contract could be brought since the promise was gratuitous.

(Citation omitted.) *Hortman* at ¶ 21.

{¶14} "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990). "It is available only in defense of a legal or equitable right or claim made in good faith and should not be used to uphold crime, fraud, or injustice." *Id.* It has often been recognized that "'equitable estoppel' is not an independent cause of action, but rather is a device by which courts bind parties to presentments made upon which an opposing party relies to his * * * detriment for the formation of a contract." (Citation omitted.) *Smith v. Safe Auto Ins. Co.*, 179 Ohio App.3d 240, 2008-Ohio-5806, 901 N.E.2d 298, ¶ 28 (6th Dist.); *Lopardo v. Lehman Bros., Inc.*, 548 F.Supp.2d 450, 468 (N.D.Ohio 2008) ("the great majority of Ohio courts, including the Ohio Supreme Court, have recognized that equitable estoppel is a defense and not an independent cause of action"). "It does not furnish a basis for damages claims, but a defense against the claim of the stopped party." (Citation omitted.) *Slone v. Allstate Vehicle and Property Ins. Co.*, S.D.Ohio No. 2:20-cv-5344, 2021 WL 38273, *4; *Torrance v. Rom*, 2020-Ohio-3971, 157 N.E.3d 172, ¶ 42 (8th Dist.) ("[t]he doctrine is a shield, not a sword").

8

Case No. 2023-P-0067

{¶15} With the foregoing in mind, the Litsingers' promissory estoppel claim fails as a matter of law. As demonstrated above, it is not based on a promise properly understood. *Andersons, Inc. v. Consol, Inc.*, 185 F.Supp.2d 833, 840 (N.D.Ohio 2001) ("[a] promise, for promissory estoppel purposes, must 'involve[e] "commitment," or "manifestation of an intention to act or refrain from acting in a specified way"'") (citation omitted). Construing the Litsingers' claim as one for equitable estoppel does not avail inasmuch as they did not raise that claim in their pleadings and such a claim does not constitute an independent cause of action for damages. *Lopardo* at 468 ("[t]he First Amended Complaint alleges misrepresentations about the past or current 'status' of accounts, but does not allege any clear and unambiguous promise future behavior" and "[s]uch allegations cannot support a claim of promissory estoppel"); *Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610, ¶ 56 (8th Dist.) ("[b]ecause appellants' claim is not based upon an enforceable promise, but rather upon a misrepresentation of an existing or past fact, it fails to satisfy the first element of promissory estoppel, and appellees are entitled to judgment as a matter of law"); *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, 939 N.E.2d 891, ¶ 95 (10th Dist.) ("[b]ecause equitable estoppel does not constitute a cause of action, appellants cannot prevail on such a 'claim'").

{¶16} The Litsingers next argue that the trial court erred by granting summary judgment on their claims for negligence and negligent misrepresentation. Rootstown counters that these claims are barred by the statute of limitations. We agree with Rootstown.

9

Case No. 2023-P-0067

{¶17} "Tort actions against political subdivisions to recover damages must be brought within two years after the cause of action accrued." *Barton v. Cty. of Cuyahoga*, 2020-Ohio-6994, 166 N.E.3d 129, ¶ 45 (8th Dist.); R.C. 2744.04(A) ("[a]n action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function * * * shall be brought within two years after the cause of action accrues"). "The 'discovery rule' generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 179, 546 N.E.2d 206 (1989).

{¶18} Assuming, arguendo, that the Litsingers are entitled to the benefit of the discovery rule, their causes of action against Rootstown accrued in June 2019, when the Portage County Combined General Health District sent a certified letter to them of statutory and administrative violations consisting of the "[i]llegal disposal of a construction and demolition debris (C&DD) and clean hard fill including, at a minimum, used shingles, plywood type materials, plastic corrugated piping, pieces of metal piping, nails, used bricks with motor-like compound attached, and concrete slabs that are placed onto the surface of the ground and into surface water which is impeding and rerouting the flow of waters of the State of Ohio." As stated in Donald's deposition, "[i]t was not until 2019 that I learned that the Township and Mr. Stephens had breached the contract and his promise and guarantee that the dumping was legal." The original Civil Complaint was filed on May 16, 2022, more than two years after the accrual of the causes of action. Accordingly, the tort claims are time barred.

10

Case No. 2023-P-0067

{¶19} The Litsingers argue that the trial court erred in granting summary judgment on their statutory claim for right of contribution. "[I]f one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them." R.C. 2307.25(A). Here, it has not been demonstrated that the Litsingers and Rootstown are tortfeasors jointly and severally liable for the same injury. "The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share." *Id.* "Thus, the right of contribution is a legal concept that applies only to joint tortfeasors." *Waverly City School Dist. Bd. of Edn. v. Triad Architects, Inc.*, 10th Dist. Franklin No. 08AP-329, 2008-Ohio-6917, ¶ 28. The Litsingers' liability for violation of environmental regulations is not tort liability (and neither would Rootstown's liability be if such were established). Rootstown's allegedly tortious conduct (negligence and negligent representation) was directed toward the Litsingers and does not establish a common liability between them. The right of contribution claim fails as a matter of law.

{¶20} The Litsingers argue that the trial court erred in granting summary judgment on their claim for declaratory judgment. "Because the Litsingers presented sufficient evidence establishing that the Township improperly disposed [of] Township dirt on the Property, and that this disposal resulted in the conditions cited by the Health District and the Ohio EPA, they have sufficiently established their declaratory judgment claim." Brief of Appellants at 31.

11

Case No. 2023-P-0067

{¶21} "[D]eclaratory relief is available to a plaintiff who can show that (1) a real controversy exists between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the rights of the parties." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 49. The Litsingers essentially seek a declaration that Rootstown, by dumping ditch dirt on their property, violated Ohio's environmental laws, specifically, R.C. 6111.04(A)(1) which provides: "No person shall cause pollution or place or cause to be placed any sewage, sludge, sludge materials, industrial waste, or other wastes in a location where they cause pollution of any waters of the state." *Also* R.C. 6111.01(I) ("'[p]erson' means * * * any other political subdivision of the state"). We find that this is not a controversy that is properly justiciable through declaratory judgment.

{¶22} "Courts of appeals have uniformly held that actions for declaratory judgment and injunction are inappropriate where special statutory proceedings would be bypassed." *State ex rel. Albright v. Court of Common Pleas of Delaware Cty.*, 60 Ohio St.3d 40, 42, 572 N.E.2d 1387 (1991); *Galion v. Am. Fedn. of State, Cty. & Mun. Emp., Ohio Council 8, AFL-CIO, Local 2243*, 71 Ohio St.3d 620, 623, 646 N.E.2d 813 (1995) ("[w]e have held that if there is a special statutory procedure which a party must use, an action for declaratory judgment is inappropriate"). "[S]ince it is always inappropriate for courts to grant declaratory judgments and injunctions that attempt to resolve matters committed to special statutory proceedings, their decisions should always be reversed on appeal, except when they dismiss the actions." *Albright* at 42.

{¶23} Responsibility for investigating violations of and enforcing Ohio's environmental laws lies with the director of environmental protection and his or her duly

12

authorized representatives. R.C. 6111.03(G) ("[t]he director of environmental protection may * * * [a]dopt, amend, and rescind rules in accordance with Chapter 119. of the Revised Code governing the procedure for hearings, the filing of reports, the issuance of permits, the issuance of industrial water pollution control certificates, and all other matters relating to procedure") and (H)(4) ("[i]ssue, modify, or revoke orders to prevent, control, or abate water pollution by such means as * * * [r]equiring compliance with any standard or rule adopted under sections 6111.01 to 6111.05 of the Revised Code or term or condition of a permit"); R.C. 6111.05 ("[t]he director of environmental protection * * * may investigate or make inquiries into any alleged act of pollution or failure to comply with this chapter or any order, any rule, the terms and conditions of a permit, or any other determination pursuant thereto"). Likewise, the prosecution of violators of Ohio's environmental laws is undertaken at the initiative of the director of environmental protection:

> The attorney general, upon the written request of the director, shall prosecute any person who violates, or who fails to perform any duty imposed by, sections 6111.01 to 6111.08 or division (B) of section 6111.33 of the Revised Code or who violates any order, rule, or condition of a permit issued or adopted by the director pursuant to those sections. The attorney general, upon written request of the director, shall bring an action for an injunction against any person violating or threatening to violate this chapter or violating or threatening to violate any order, rule, or condition of a permit issued or adopted by the director pursuant to this chapter.

R.C. 6111.07(B).

{¶24} Under the foregoing provisions, the determination of whether a prosecution for the violation of R.C. 6111.04(A)(1) is merited is for the director of environmental protection. These special statutory proceedings would be circumvented if we were to allow private litigants such as the Litsingers to initiate and prosecute alleged violations

13

through an action for declaratory judgment. Accordingly, the claim for declaratory judgment was properly dismissed. *Albright* at 43 (declaratory judgment could not intrude into the statutory process of annexation proceedings); *Galion* at paragraph two of the syllabus ("[a]n action in declaratory judgment cannot be maintained to circumvent the clear legislative intent of R.C. Chapter 2711 [providing the exclusive statutory remedy which parties must use in appealing arbitration awards to the courts of common pleas]"); *Aust v. Ohio State Dental Bd.*, 136 Ohio App.3d 677, 683, 737 N.E.2d 605 (10th Dist.) ("Appellant attempted to bypass these special statutory procedures [the Dental Practice Act] by filing this declaratory judgment action").

**{¶25}** The Litsingers' final claim was for injunctive relief. According to the First Amended Complaint, the Litsingers sought injunctive relief "enjoining the Township, its agents, or employees, from deposing Waste Materials, including, but not limited to, solid Waste Materials on the Litsingers' Property or otherwise conducting any action that creates a nuisance on the Property and/or otherwise interferes with the Litsingers' use and enjoyment of their Property." According to the Brief of Appellants, the Litsingers "are entitled to the equitable remedy of requiring the Township to remove the Township dirt and restore the Wetland [their property] to its original state." Brief of Appellants at 32. Neither iteration of the claim for injunctive relief states a valid claim.

**{¶26}** "It is well-established that in order to obtain an injunction, the moving party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists." (Citation omitted.) *Redding v. United States Parachute Assn., Inc.*, 11th Dist. Geauga No. 2022-G-0024, 2023-Ohio-884, ¶ 50. To the extent that the Litsingers seek to enjoin

14

Case No. 2023-P-0067

Rootstown from depositing waste materials on their property, they have failed to demonstrate that a genuine issue of material fact exists that they are menaced by immediate and irreparable injury. Donald testified by deposition that the last time Rootstown dumped material on his property was in 2019. Hahn testified that, as of 2021, the township no longer has the policy of distributing ditch dirt to its residents upon request. There is no evidence that such an occurrence is likely to occur in the immediate future.

{¶27} With respect to the Litsingers' claim that they are entitled to injunctive relief mandating that Rootstown restore the wetlands to their original state based on the violation of R.C. Chapter 6111, such a purpose is not justiciable for the same reasons set forth above in connection with declaratory judgment. *Albright*, 60 Ohio St.3d at 42, 572 N.E.2d 1387 ("[c]ourts of appeals have uniformly held that actions for declaratory judgment and injunction are inappropriate where special statutory proceedings would be bypassed").

{¶28} The sole assignment of error is without merit.

{¶29} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, granting summary judgment in favor of Rootstown, is affirmed. Costs to be taxed against the appellants.


EUGENE A. LUCCI, P.J.,

ROBERT J. PATTON, J.,

concur.


15

Case No. 2023-P-0067