[Cite as *Black v. Girard*, 2023-Ohio-266.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| MILES BLACK, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED, et al., | CASE NO. 2021-T-0061 |
| Plaintiffs-Appellants, | Civil Appeal from the Court of Common Pleas |
| - v - | |
| CITY OF GIRARD, OHIO, et al., | Trial Court No. 2018 CV 01256 |
| Defendant-Appellee. | |

**O P I N I O N**

Decided: January 30, 2023
Judgment: Affirmed in part, reversed in part, and remanded

*Marc E. Dann*, *Brian D. Flick*, and *Michael A. Smith*, Dann Law, 1500 Madison Avenue, Lakewood, OH 44107, and *Thomas A. Zimmerman, Jr.*, Zimmerman Law Offices, PC, 77 West Washington Street, Suite 1220, Chicago, IL 60602 (For Plaintiffs-Appellants).

*James M. Popson* and *Robert E. Cahill*, Sutter O'Connell Co., 1301 East Ninth Street, 3600 Erieview Tower, Cleveland, OH 44114 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1} Plaintiffs-appellants and class representatives, Miles Black, Melissa Black aka Melissa Hyde, Lorraine Morris, John Perfette, Samuel Rotz, and John Beal, appeal the decision of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, the City of Girard. For the following reasons, we affirm in part, reverse in part, and remand the decision of the trial court for further proceedings consistent with this opinion.

{¶2} On July 16, 2018, the plaintiffs filed a Class Action Complaint for Violation of the Ohio Constitution, Declaratory Judgment, Equitable Restitution, Violation of the Ohio Consumer Sales Protection Act, Negligent Misrepresentation, and Civil Conspiracy against defendants, the City of Girard, Ohio, and Blue Line Solutions, LLC. Girard was identified as an Ohio municipality authorized to ticket persons who exceed the speed limits along Interstate 80 within its boundaries. Blue Line operates an automatic traffic enforcement system on behalf of Girard. The plaintiffs alleged that they were issued citations for speeding in Girard between December 7, 2017, and January 7, 2018. During this period, there was a posted speed limit of 55 mph on a portion of Interstate 80 where construction was taking place. According to the plaintiffs, the actual speed limit was 65 mph since the Ohio Department of Transportation had completed its construction on December 7, 2017. The citations were issued by Girard with a percentage of the collected fines given to Blue Line.

{¶3} On November 21, 2018, the trial court dismissed plaintiffs' claims for violations of the Ohio Consumer Sales Practices Act and Negligent Misrepresentation.

{¶4} On July 12, 2019, the trial court certified the following class with the named plaintiffs as class representatives: "All persons and entities who were issued a citation for allegedly travelling in excess of 55 m.p.h. in violation of Girard City Ordinance 333.03 and/or Traffic Code Ordinance 8069-16, between December 7, 2017 and January 7, 2018, in the westbound lane of Interstate 80 within the municipal limits of the City of Girard." The class certification was affirmed by this court in *Black v. Girard*, 11th Dist. Trumbull No. 2019-T-0050, 2020-Ohio-1562.

{¶5} On March 5, 2021, Girard filed a Motion for Summary Judgment. On April

2

Case No. 2021-T-0061

26, 2021, the plaintiffs filed a Response in Opposition. On May 17, 2021, Girard filed a Reply in Support of its Motion for Summary Judgment. On May 21, 2021, the plaintiffs filed a Motion to Supplement their Response in Opposition. On May 26, 2021, Girard filed a Brief in Opposition to the Motion to Supplement.

{¶6} On November 24, 2021, the trial court granted final approval of the class settlement entered into between plaintiffs and Blue Line Solutions.

{¶7} On December 9, 2021, the trial court granted Girard's Motion for Summary Judgment. The court found that res judicata applied "collectively" to bar all the plaintiffs' claims, i.e., Violation of the Ohio Constitution, Declaratory Judgment, Equitable Restitution, and Civil Conspiracy:

> [T]he Ohio Revised Code provides certain due process opportunities to contest the issued citations. R.C. 4511.098(A) provides: "A person or entity who receives a ticket for a civil violation * * * shall elect to do one of the following: (1) In accordance with instructions on the ticket, pay the civil penalty, thereby admitting liability and waiving the opportunity to contest the violation; * * * (5) Contest the ticket by filing a written request for a court hearing[1] to review the ticket in a form established by the court. * * * The failure to request a hearing within this time period constitutes a waiver of the right to contest the violation and ticket, and is deemed to constitute an admission of liability and waiver of the opportunity to contest the violation."

> Plaintiffs Miles Black, Melissa Black, Lorraine Morris and John Perfette did not timely request an administrative hearing to contest the speeding citations at issue. Accordingly, as a matter of law based on the aforementioned statute, those Plaintiffs have waived any right to contest the violations.

> Plaintiffs Samuel Rotz and John Beal did timely request an administrative hearing. Rotz and Beal each received a reduction in the fine as a result of the administrative hearing. Either of these

---

1. Under the version of R.C. 4511.098(A)(5) in effect between December 7, 2017, and January 7, 2018, the recipient of a ticket could request an "administrative hearing to review the ticket." This administrative hearing will be discussed further below.

3

Plaintiffs could have appealed the decision of the administrative hearing officer to the municipal court and ultimately, to the Eleventh District Court of Appeals.  However, none of the Plaintiffs chose to avail themselves of this opportunity.

* * *

Although the Plaintiffs herein assert unique arguments not discussed at the hearings (where applicable), that does not remove them from the umbrella of res judicata.  "That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims.  This remains true although the several legal theories depend on different shadings of fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."  *Grava* [*v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995),] at 382-383 (internal citations omitted).

Accordingly, the Court finds the Plaintiffs' claims are barred by res judicata.  As a matter of law, Girard is entitled to summary judgment in its favor on all claims based on res judicata.

{¶8}    The trial court further held with respect to Violation of the Ohio Constitution: "[T]he Plaintiffs were afforded these opportunities [i.e., the opportunity for an administrative hearing and appeal] for due process and most chose not to avail themselves of these benefits.  This is not a violation of procedural due process.  That is a personal choice to disregard such opportunities."

{¶9}    The trial court additionally found with respect to Declaratory Judgment that such an action "is not proper since there are statutory procedures by which to present such a claim" and the Plaintiffs failed to do so.

{¶10}  Finally, the trial court found with respect to Civil Conspiracy that "the issuance of the speeding citations is a governmental function pursuant to R.C. 2744.01(C)(2)(a), (e), (i) and (j)," and, therefore, "Girard is entitled to immunity pursuant to R.C. 2744.02(A)(1)."

4

{¶11} On December 29, 2021, the plaintiffs filed a Notice of Appeal. On appeal, they raise the following assignments of error:

> [1.] The trial court erred when it granted summary judgment in favor of Girard on the basis that Plaintiffs waived their rights to contest invalid speeding citations because Plaintiffs had no reasonable opportunity to discover the facts establishing the invalidity of the citations until after the time expired to submit a written request to contest the citations.

> [2.] The trial court erred in granting summary judgment in favor of Girard on the basis that Plaintiffs were barred by res judicata because Plaintiffs had no reasonable opportunity to discover the facts establishing the invalidity of the citations until after the time expired to submit a written request to contest the citations.

> [3.] The trial court erred when it granted summary judgment in favor of Girard on Plaintiffs' Due Course of Law Claim because Plaintiffs had no reasonable opportunity to discover the facts establishing the invalidity of the citations until after the time expired to submit a written request to contest the citations.

> [4.] The trial court erred when it granted summary judgment in favor of Girard on Plaintiffs' declaratory judgment count because Plaintiffs had no reasonable opportunity to discover the facts supporting their causes of action until after the time expired to contest the citations.

{¶12} The assignments of error will be addressed in a consolidated fashion. We first consider whether the trial court erred by granting summary judgment to Girard on the basis of res judicata.[2]

{¶13} "The application of the doctrine of *res judicata* is a question of law which a reviewing court resolves without deference to the decision of the lower court," i.e., de

---

2. The plaintiffs assert that res judicata is an affirmative defense that Girard waived by not raising it in its Answer to the Complaint. However, since the plaintiffs failed to raise their argument in their Opposition to Girard's Motion for Summary Judgment, they have waived it. *See Estes v. Robbins Lumber, L.L.C.*, 12th Dist. Clermont No. CA2016-02-011, 2016-Ohio-8231, ¶ 20 (the failure to raise arguments in opposition to summary judgment constitutes waiver of such arguments).

5

novo. *Rossow v. Ravenna*, 11th Dist. Portage No. 2001-P-0036, 2002-Ohio-1476, ¶ 7. As an affirmative defense, the party asserting the doctrine of res judicata bears the burden of demonstrating its applicability in a given case. *Jochum v. State ex rel. Mentor*, 11th Dist. Lake No. 2020-L-032, 2020-Ohio-4191, ¶ 56. "The application of the principles of res judicata * * * is not mandatory in every case." *Smith v. Ohio Edison Co.*, 2015-Ohio-4540, 46 N.E.3d 1103, ¶ 9 (11th Dist.). Rather, "the doctrine of res judicata is to be applied in particular situations as fairness and justice require, *and * * * it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.*" (Citations omitted.) *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 491, 756 N.E.2d 657 (2001).

{¶14} The doctrine of res judicata provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava*, 73 Ohio St.3d 379, 653 N.E.2d 226, at syllabus. The doctrine "applies to administrative proceedings that are '"of a judicial nature and where the parties have had ample opportunity to litigate the issues involved in the proceeding."'" (Citations omitted.) *Id.* at 381. However, the doctrine "should not bar relitigating an issue if the litigant who would be barred 'lacked full and fair opportunity to litigate that issue in the first action, or * * * other circumstances justify according him an opportunity to relitigate that issue.'" (Citation omitted.) *Julia Realty, Ltd. v. Cuyahoga Cty. Bd. of Revision*, 153 Ohio St.3d 262, 2018-Ohio-2415, 104 N.E.3d 755, ¶ 18; *id.* ("collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case") (citation omitted).

{¶15} In the present case, we find the plaintiffs did not have a full and fair

6

opportunity to litigate the issue of whether the posted speed limit of 55 mph was valid through the administrative hearing process afforded by former R.C. 4511.099. To begin with, the precise issue raised by the plaintiffs, i.e., whether the speed limit on I-80 reverted from the reduced limit set by the director of transportation to the statutorily fixed limit of 65 mph upon presumed completion of the construction, could not readily be raised in the regular course of adjudicating the speeding tickets. The citations issued to the plaintiffs advised them that their vehicles were "photographed violating public safety by exceeding the posted speed," in violation of Girard Codified Ordinance 333.03. Framed in these terms, the plaintiffs did violate the Ordinance: they were exceeding the posted speed limit, and this constitutes a "prima-facie" violation. G.C.O. 333.03(h). The Girard Ordinance does provide that, where "the speed limitations as established [in the Codified Ordinances] have been altered, either higher or lower," such alteration must be "in accordance with Ohio R.C. 4511.21." But even a challenge based on the lowering of the speed limit does not encompass the plaintiffs' argument herein inasmuch they do not dispute that posted speed limit of 55 mph was established in accordance with the appropriate statutes. Rather, their argument is whether the 55-mph speed limit continued to be legally enforceable and/or did such reduction cease to have legal effect after the completion of construction.

{¶16} Moreover, the administrative hearing provided by former R.C. 4511.099 did not constitute adequate process for raising the plaintiffs' claims. This hearing was to be held by "[a] hearing officer appointed by the local authority * * * not sooner than twenty-one but not later than forty-five days after the filing of a written request for the hearing." The time for holding the hearing could be extended upon request. Former R.C.

7

4511.099(A)(1). "The hearing officer may schedule multiple hearings for the same time to allow for occurrences such as nonappearance or admissions of liability." Former R.C. 4511.099(A)(2). The party requesting the hearing "may present evidence at the hearing." Former R.C. 4511.099(A)(3). In determining liability, the hearing officer may consider the following as affirmative defenses: "the motor vehicle or license plates of the motor vehicle were stolen prior to the occurrence of the violation"; "the traffic law photo-monitoring device was not in proper position and the recorded image is not of sufficient legibility to enable an accurate determination of the information necessary to impose liability"; and "the registered owner or person * * * named in the ticket was not the person operating the motor vehicle at the time of the violation." Former R.C. 4511.099(C)(1)(b), (c), and (d). "The hearing officer shall render a decision on the day a hearing takes place." Former R.C. 4511.099(B)(4).

{¶17} The hearing so provided could be described in some respects as having a judicial nature, e.g., the parties could present evidence, but would not have provided the plaintiffs ample opportunity to litigate the claims they are presently raising. The hearing procedures have an expedited character and only provide for a limited number of defenses to be raised. Most notably, former R.C. 4511.099 did not provide for discovery or the compelling of witness testimony in the preparation of a defense. Without the ability to conduct discovery, it is difficult to imagine how the plaintiffs could establish the invalidity of the posted speed limit.

{¶18} As the party bearing the burden of demonstrating the applicability of res judicata, Girard offers neither evidence nor argument as to why the plaintiffs should have questioned the validity of the posted speed limit during the time when it was possible to

8

contest their citations. Granted, the plaintiffs had the opportunity to contest their citations before a "quasi-judicial authority" having "the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." Appellee's Brief at 26, citing *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999). But the simple ability to contest the citations is not the same as a full and fair opportunity to litigate their particular challenge to the citations. Their challenge is not, as suggested by the trial court, a matter of emphasizing different shadings or elements of the facts, but requires the establishment of facts, the development of which the quasi-judicial administrative hearing was wholly unsuited. *Compare Holzemer v. Urbanski*, 86 Ohio St.3d 129, 133, 712 N.E.2d 713 (1999), fn. 2 ("[i]n order to avoid the possible misleading connotations in this context [res judicata] of the phrase 'claims which might have been litigated' in the first lawsuit, some courts prefer to refer instead to 'claims which *should have been* litigated' in the first lawsuit") (emphasis added.).

{¶19} We note that the Ohio Supreme Court recently decided, in a superficially similar case, that res judicata did apply to bar plaintiffs who paid their citations issued by automated traffic cameras from contesting the validity of those citations in a subsequent lawsuit. In *Lycan v. Cleveland*, __ Ohio St.3d __, 2022-Ohio-4676, __ N.E.__, the court identified four requirements for the application of res judicata/claim preclusion: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action."

9

Case No. 2021-T-0061

*Id.* at ¶ 23, citing *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir.1997).

{¶20} It is with respect to the third requirement, i.e., that the second action involves claims that "were or could have been litigated in the first action," that *Lycan* is distinguishable from the present case. Unlike the present case, the claims raised by the plaintiffs in *Lycan* not only could have been asserted in the administrative process, but had been successfully asserted in the administrative process by other plaintiffs: "Based on *Dickson & Campbell*, [*v. Cleveland*, 181 Ohio App.3d 238, 2009-Ohio-738, 908 N.E.2d 964 (8th Dist.),] we know that appellees could have been successful in raising that defense at the administrative level." *Id.* at ¶ 31. The court continued: "And if they had raised issues outside those that the hearing officer was authorized to decide, such as constitutional issues, they could have appealed and raised those issues to the common pleas court and then to the court of appeals if necessary." *Id.*

{¶21} As noted above, in the present case, neither evidence nor argument were presented as to why the plaintiffs should have questioned the validity of the posted speed limit during the time when it was possible to contest their citations. The plaintiffs' claims in *Lycan* were based on their status as lessees rather than owners of their vehicles and the text of the relevant ordinance. The *Lycan* plaintiffs had both notice and the ability to raise the defense that the ordinance did not apply to them at the time allotted for contesting the citations. In the present case, there is no evidence that anyone knew or should have known that there was an issue regarding the validity of the posted speed limit on I-80 in December 2017 to January 2018. Even if the plaintiffs were on notice regarding this possible defense, the administrative process did not provide for the discovery necessary to develop and establish that defense. Accordingly, we find that the

10

claims the plaintiffs raise in the present lawsuit were not and could not have been litigated in the first action and, thus, res judicata is inapplicable.

{¶22} Our analysis will now consider whether there are grounds for affirming the grant of summary judgment with respect to the plaintiffs' particular claims. A trial court's error is harmless and may be affirmed if judgment is appropriate under other legal grounds. *See Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284, 58 N.E.2d 658 (1944) ("where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof").

{¶23} The trial court determined that Girard was entitled to immunity regarding the plaintiffs' claim for Civil Conspiracy. Since the plaintiffs do not challenge that aspect of the trial court's judgment on appeal, it remains intact. *See* App.R. 12(A)(1)(b) ("a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16"); *In re Estate of Zeak*, 10th Dist. Franklin No. 20AP-310, 2022-Ohio-951, ¶ 17 (the scope of the appellate court's review is limited "to the error asserted by appellant").

{¶24} Girard argues on appeal that it is also entitled to immunity regarding the plaintiffs' claims for Violation of the Ohio Constitution, Equitable Restitution, and Declaratory Judgment. Appellee's brief at 21 ("the general grant of immunity set forth in R.C. 2744.02(A) applies and precludes all of Appellants' claims against the City"). Since Girard raised its immunity argument in its Motion for Summary Judgment, we consider it pursuant to Appellate Rule 3(C)(2) ("[a] person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the order is not required to file a notice of cross-appeal or to raise a cross-

11

assignment of error").

**{¶25}** Generally, R.C. Chapter 2744 grants political subdivisions immunity from tort actions, providing that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1); *State ex rel. Fatur v. Eastlake*, 11th Dist. Lake No. 2009-L-037, 2010-Ohio-1448, ¶ 34. The definition of "governmental function" includes "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection"; "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds"; "[t]he enforcement or nonperformance of any law"; and "[t]he regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices[.]" R.C. 2744.01(C)(2)(a), (e), (i), and (j).

**{¶26}** With respect to their constitutional claim, the plaintiffs allege that the issuing of the citations "violates the Ohio Constitution's guarantee of 'due course of law' [Section 16, Article I] because it imposes penalties, fines, and other fees upon Plaintiffs and Class members in excess of what is statutorily enforceable." R.C. 2744.09(E) provides that a political subdivision is not immune from "[c]ivil claims based upon alleged violations of the constitution * * * of the United States." Since the plaintiffs' constitutional claim is based on the state constitution, it remains barred. *Rayland v. Jenkins*, 2018-Ohio-3487, 118 N.E.3d 1121, ¶ 20 (7th Dist.) ("[t]he General Assembly specifically exempted civil claims based upon * * * the federal constitution from the purview of Chapter 2744" but made "no similar provision for civil claims based upon * * * the state constitution").

12

{¶27} With respect to their Equitable Restitution claim, the plaintiffs allege that Girard "received thousands of dollars in revenue from issuing the Citations to Plaintiffs and Classmembers" based on "invalid tickets" and, as a result, has "been unjustly enriched." As Girard "should not be permitted to unjustly retain the penalties, fees, and other charges that have been paid," the plaintiffs ask that Girard "be ordered to disgorge all such payments made to [it]."

{¶28} "[S]overeign immunity does not bar claims for equitable relief, only for legal relief." *Cleveland v. Ohio Bur. of Workers' Comp.*, 159 Ohio St.3d 459, 2020-Ohio-337, 152 N.E.3d 172, ¶ 10. "[T]here are many Ohio cases where claims for reimbursement of monies collected by a political subdivision were found to be equitable claims even though the collection of monies was within the political subdivision's authority." *Barrow v. New Miami*, 2018-Ohio-217, 104 N.E.3d 814, ¶ 40 (12th Dist.) (cases cited); *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, ¶ 17 ("[a] suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity"); *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105, 579 N.E.2d 695 (1991) ("[t]he reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity").

{¶29} However, the Supreme Court of Ohio's decision in *Cleveland v. Bur. of Workers' Comp.* undermines the continued validity of those prior rulings. In that case, the city as an employer brought suit against the Bureau of Workers' Compensation for allegedly excessive premiums. The issue was whether the claim was legal or equitable, not for the purposes of applying immunity, but to determine "whether the case was

13

properly filed in the court of common pleas or whether it should have been filed in the Court of Claims, which has exclusive jurisdiction over certain claims against state entities." *Id.* at ¶ 2.

{¶30} The court's analysis, however, began with the premise that "the doctrine of sovereign immunity never barred equitable claims, which have always been cognizable against the state," and that "courts of common pleas continue to have original jurisdiction over them pursuant to Article I, Section 16, and Article IV, Section 4(B) of the Ohio Constitution and R.C. 2305.01." *Id.* at ¶ 10. The court recognized its precedents in *Santos* and *Ohio Hosp.* but did not find them determinative of the outcome:

> Since we decided *Santos* and *Ohio Hosp. Assn.*, the United States Supreme Court has provided clear guidance regarding what constitutes equitable relief, and that guidance further supports our determination that the claim here is a legal claim. In 2016, the court explained that a claim sounded in law if it sought to recover from a defendant's general assets rather than "specifically identified funds that remain in the defendant's possession." *Montanile v. Natl. Elevator Industry Health Benefit Plan Bd. of Trustees*, 577 U.S. 136, 144-145, 136 S.Ct. 651, 193 L.Ed.2d 556 (2016). The court further explained that "[e]quitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing * * * rather than a right to recover a sum of money generally out of the defendant's assets.' 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941) (Pomeroy)." (Ellipsis sic.) *Id.* at 145. The court stated that if there is not a specifically identifiable fund–or traceable items on which the money from the fund was spent–to seize, "the plaintiff could not attach the defendant's general assets instead." *Id.* In such a case, "[t]he plaintiff had 'merely a personal claim against the wrongdoer'– a quintessential action at law." *Id.* at 146, quoting Restatement of the Law, Restitution, Section 215(1), at 866 (1936).

*Id.* at ¶ 16.

{¶31} The court concluded that the premiums paid by the city to the bureau could no longer be identified or traced to particular funds in the bureau's possession: "Although

14

Case No. 2021-T-0061

the BWC kept track of the amount of Cleveland's premium payments, R.C. 4123.34(A), Cleveland's premiums went into a general insurance fund, R.C. 4123.30, i.e., they were not kept separate from payments made by other public employers. Once Cleveland's premium payment was deposited into the fund, it became commingled with the premium payments from other employers. And even if we considered the state insurance fund itself to be a specific fund, Cleveland paid the last funds it seeks to recover in 2009." *Id.* at ¶ 17. In such circumstances, the court deemed it impossible that the money paid by the city was traceable to any specific funds in the bureau's possession.

{¶32} Girard argues that monies received from the plaintiffs in the present action are similarly unidentifiable and untraceable, specifically, that they have been deposited into various municipal funds where they were commingled with other monies, spent for municipal purposes in the years since 2018, and are no longer in the city's possession. Additionally, Girard argues that it only received about 51% of the revenue generated by the citations, the balance being retained by Blue Line Solutions. Appellee's Brief at 23.

{¶33} In support of its claims, Girard cites Municipal Ordinance 307.11(a) which provides:

> The civil penalties collected [through the use of traffic law monitoring devices] shall be allocated to the following funds:
>
> Fifty-eight percent (58%) to the General Fund - Fund 100
>
> Eighteen percent (18%) to the Street Construction Fund - Fund 201
>
> Fourteen percent (14.0%) to the Recreation Fund - Fund 214
>
> Five percent (5%) to the Capital Improvement Safety Fund - Fund 925
>
> Five percent (5%) to the Capital Improvement Fund - Fund 900

15

{¶34} Additionally, Girard cites the Affidavit of Julie Coleman, Auditor for the City of Girard, attesting to the commingling and disbursement of the funds received from the issuing of citations as well as the percentage of those funds retained by Blue Line Solutions.[3]

{¶35} Under the Supreme Court of Ohio's analysis in *Cleveland v. Bur. of Workers' Comp.*, it must be concluded that plaintiffs' restitution claim is a legal claim for damages and thus barred by Girard's immunity. The evidence before this court is that the allegedly improper revenues from the issuance of the citations was assigned to various municipal funds where it was commingled with other monies and distributed. In all material respects, this is what happened with the premiums at issue in *Cleveland*. The plaintiffs are correct in pointing out that commingling does not necessarily render funds untraceable and that workers' compensation is a "revenue-neutral fund" and that it is possible to assume that funds remain traceable in an account as long as the account balance does not fall below the funds at issue. Such considerations do not alter the outcome. In *Cleveland*, the amount of premiums paid by the city was known and the premiums were deposited into an identifiable fund. Nevertheless, the premiums "were not kept separate from payments made by other public employers" and "became commingled with the premium payments from other employers." Given these circumstances and the passage of time, the court found it "inconceivable how money

---

3. As the plaintiffs correctly note, Girard raised this argument for the first time in its Reply Brief in support of summary judgment. However, the plaintiffs neither moved the trial court to strike the new argument nor sought leave to file a surreply. It has been held that "[a] party who fails to move the trial court to strike a reply brief on the ground that a new argument was raised waives the argument on appeal." *Charlesgate Commons Condominium Assn. v. W. Reserve Group*, 6th Dist. Lucas No. L-14-1039, 2014-Ohio-4342, ¶ 13.

16

Case No. 2021-T-0061

belonging to Cleveland could 'clearly be traced to particular funds or property' in the BWC's possession." (Citation omitted.) *Cleveland* at ¶ 17. As in *Cleveland*, so in the present case. The monies generated by the citations were placed into funds where they were commingled and dispersed. If there are any circumstances that would distinguish the present case from *Cleveland*, those circumstances are not in evidence.

{¶36} Other cases involving similar claims against political subdivisions based on the unjust retention of funds have similarly held, in light of the *Cleveland* decision, that the commingling and disbursement of the funds destroys traceability and renders the claims legal in nature. *See Barton v. Cty. of Cuyahoga*, 2020-Ohio-6994, 166 N.E.3d 129 (8th Dist.) (involving claims for replevin and conversion based on the "unlawful retention of forfeited funds"); *Musial Offices, Ltd. v. Cty. of Cuyahoga*, 2020-Ohio-5426, 163 N.E.3d 84 (8th Dist.) (involving claims for unjust enrichment "to recover the overpayment of real property taxes"). Accordingly, the trial court did not err in granting summary judgment to Girard on the plaintiffs' claims for Civil Conspiracy, Violation of the Ohio Constitution, and Equitable Restitution.

{¶37} With respect to their claim for Declaratory Judgment, the plaintiffs sought "a declaration that the Citations issued in the I-80 Non-Construction Zone for alleged violations of GCO 333.03 and/or Traffic Code Ordinance 8069-16 for traveling in excess of 55 m.p.h. between December 7, 2017, and January 7, 2018, are invalid and unenforceable." By its very language and title, R.C. Chapter 2744 applies only to tort actions for damages. *Barton* at ¶ 36. Therefore, Girard is not entitled to political subdivision immunity regarding the plaintiffs' claim for Declaratory Judgment.

{¶38} The trial court found that four of the plaintiffs waived their right to contest

Case No. 2021-T-0061

their citations pursuant to R.C. 4511.098(A)(5) with provides: "The failure to request a hearing within [thirty days of the receipt of the ticket] constitutes a waiver of the right to contest the violation and ticket, and is deemed to constitute an admission of liability and waiver of the opportunity to contest the violation." However, the law in effect at the time the plaintiffs received their citations provided: "No decision under this section [R.C. 4511.099], and no admission of liability under this section or section 4511.098 of the Revised Code, is admissible in any other judicial proceeding in this state." Former R.C. 4511.099(H). Construing these provisions together, the failure to request a hearing constituted a waiver of the right to contest the violation in the context of the administrative process. Therefore, the statutory waiver in R.C. 4511.098(A)(5) is not applicable to these plaintiffs' claim for Declaratory Judgment.

{¶39} The trial court also found that the plaintiffs failed to avail themselves of the statutory procedures to present their claims. "A general rule regarding declaratory judgments is that where a special statutory method for the determination of a particular type of case has been provided, it is not proper to by-pass this statutory procedure by means of a declaratory judgment action." *State ex rel. Iris Sales Co. v. Voinovich*, 43 Ohio App.2d 18, 19, 332 N.E.2d 79 (8th Dist.1975). However, the rule only applies where "if a remedy exists which is effectual to afford the relief sought." *Kaufman v. Village of Newburgh Heights*, 26 Ohio St.2d 217, 219, 271 N.E.2d 280 (1971). For the reasons discussed above, the administrative hearing afforded by former R.C. 4511.099 was not an adequate remedy of which the plaintiffs were required to avail themselves.

{¶40} Finally, Girard argues that, inasmuch as the plaintiffs' Violation of the Ohio Constitution claim lacks merit, their claim for Declaratory Judgment "is likewise doomed

18

Case No. 2021-T-0061

by the failure of that claim." Appellee's Brief at 34, citing *Jenkins v. Eberhart*, 71 Ohio App.3d 351, 358, 594 N.E.2d 29 (4th Dist.1991) (when an underlying cause of action fails so too must a claim for declaratory judgment). Girard presumes that the plaintiffs' constitutional claim forms the underlying legal basis for their Declaratory Judgment claim. However, Count Two of the plaintiffs' Complaint makes no express reference to the Ohio Constitution. Further, the rule stated in *Jenkins* applies when an underlying claim fails for lack of subject matter jurisdiction, *see id.* at 357, which is not the case here. Specifically, the Supreme Court of Ohio has held that "declaratory judgment statutes provide an additional remedy which may be granted by a court but they do not extend the jurisdiction as to the subject matter upon which a court may act." *Ryan v. Tracy*, 6 Ohio St.3d 363, 367, 453 N.E.2d 661 (1983), quoting *State ex rel. Foreman v. Bellefontaine Municipal Court*, 12 Ohio St.2d 26, 28, 231 N.E.2d 70 (1967). Accordingly, the trial court erred by granting summary judgment to Girard on the plaintiffs' claim for Declaratory Judgment.

{¶41} The plaintiffs' assignments of error have merit to the extent indicated above.

{¶42} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed in part and reversed in part. Summary judgment in favor of Girard is affirmed as to the plaintiffs' claims for Violation of the Ohio Constitution, Equitable Restitution, and Civil Conspiracy, and reversed as to the plaintiffs' claim for Declaratory Judgment. This matter is remanded for further proceedings consistent with this opinion. Costs to be taxed between the parties equally.

THOMAS R. WRIGHT, J.,

MARY JANE TRAPP, J.,

concur.

19

Case No. 2021-T-0061